# McGAULEY v. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division One, February 10, 1904.

1. **Street Railway**: WAGON TRACK. The driver of a wagon on a railway track in a public street is not a trespasser on the track.

2. ———: ———: CARE. But his duty is to use ordinary care to avoid injury, and if with safety to himself he can drive along that part of the street outside the track, his care in avoiding a collision with a car should be commensurate with the greater danger assumed in driving on the track.

3. ———: ———: ———: LOOKOUT: DARKNESS. He is charged with knowing that the law compels him to know that cars are liable to come towards his wagon from behind, and to be on the lookout for them. And if it is dark and there are no street lamps, those facts should make him more cautious.

4. ——— : ———: ———: SOUNDING GONG. A street car is not required to sound a gong as a warning to a wagon on the track which the operators do not see, in the suburbs of a city where there are no street crossings.

5. ———: ———: FAILURE TO LOOK. The driver of a wagon drove for three blocks or more along the track, in the suburbs of a city where there was no street crossing, without turning to look for the approach of a car from behind until he heard the car close upon him. There was an electric headlight on the dashboard, which could have been seen for a "block or so," and had he looked he could have seen it a block away, in time to have avoided a collision between the car and the end of a long coupling pole which stuck out behind the wagon, that overturned the wagon, and injured him. The gong was not sounded, and when the collision occurred the wagon wheels were clear of the track. *Held*, that, granting that the defendant was negligent in allowing the car to be in use without a safe brake, and that the motorman was negligent in not sounding the gong, and that those things contributed to the accident, yet as the accident could have been avoided had plaintiff taken care to look for the approaching car, and did not, he can not recover. *Held*, also, that it can not be said as a matter of law that the

defendant was negligent in not sounding the gong, since the wagon was an open one without any bed, and the motorman did not see it until he was so close to it that he could do nothing to avoid the collision.

6. ——: SAFE BRAKE: DUTY TO DRIVER OF WAGON. A street railway company owes to a driver of a wagon on its track the duty only to have a reasonably safe car. In this case it is shown that the brake of the street car was so worn that it required two and a half more turns to set it than it would have required if in perfect order, and it is held that, considering the duty that the company owed the driver, this evidence does not show that the brake was not reasonably safe.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

REVERSED AND REMANDED (*with directions*).

*Boyle, Priest & Lehmann* and *George W. Easley* for appellant.

(1) There was no evidence of negligence upon the part of defendant's employees. There was no reliable evidence that the rate of speed was excessive. Guyer v. Railroad, 73 S. W. 584. The motorman could not see the pole extending behind the wagon. No causal relation is shown between the alleged defect in the brake and the injury. Going down the grade the car could not have been stopped with any kind of brake, after the plaintiff came into the view of the motorman. (2) Plaintiff was guilty of such contributory negligence as defeats his recovery. He drove in the car tracks a distance of three blocks, without ever looking or listening for the approach of cars behind him, well knowing that cars were operated in that direction over that track, when, if he had looked or listened, he could have seen or heard the approach of the car in plenty of time to have turned out to the right, on to a well macadamized street. His failure to do so was negligence. His wagon was not struck. It was the pole, extending ten feet to the rear of

the wheels, which came in collision with the car, and which could not be readily seen by the motorman. The demurrer to plaintiff's evidence should have been sustained. Moore v. Railroad, 75 S. W. 676; Everett v. Los Angeles, etc. Co., 43 Pac. 208.

*Kinealy & Kinealy* for respondent.

(1)   The theory of the case presented to the jury by appellant's instructions 1 and 2, was that although defendant's car was coming up behind the wagon driven by plaintiff without signal, warning, bell ringing, or sufficient light to enable the motorman to see the car sufficiently far ahead to take timely steps to stop his car, and although the car was practically uncontrollable on a down grade because of the bad condition of the braking apparatus, yet plaintiff could not recover unless he had kept a constant watch behind him, while driving his wagon, so that he could see the coming car in time to enable it "to pass without being delayed" or, as it was put in instruction 2 for defendant:   Plaintiff could not recover if he "did not keep such a reasonably careful lookout and thereby did not see defendant's car until it was too late for him to turn out of the track and avoid collision with it, and that defendant's motorman, on account of the darkness" (which defendant could have remedied by doing its duty in providing a sufficient headlight) "did not see plaintiff and his vehicle on the track in time to stop his car in order to avoid a collision." There was ample evidence admitted without objection that defendant's headlight was dim, and this, undoubtedly, "was material to the main issue whether defendant did all it could to avoid the injury after its motorman discovered or ought to have discovered plaintiff on its track." Klockenbrink v. Railroad, 72 S. W. 904. In effect these instructions tell the jury that no matter how defective was the apparatus for stopping the car, no matter if the car was uncontrollable because of those de-

fects, no matter if the motorman ran ahead at an inordinate speed without warning or signal, no matter how utterly reckless or careless he may have been, if plaintiff failed to keep watch behind while driving ahead on a dark night so as to be able to turn out in time to avoid the racing, broken-down car under such reckless management or incapable of being controlled, this failure of the plaintiff was the proximate cause of every damage that was done by the car and plaintiff can not recover. (2)   No warning having been given or bell rung on defendant's car to indicate its approach, plaintiff had a right to assume that no car was coming behind him. Donahue v. Railroad, 91 Mo. 357.    (3)   The short space of a block, which was the distance at which, on the uncontradicted evidence, the plaintiff in this case could have seen defendant's coming car, would have been traversed, the car running at fifteen miles per hour, in 15 1-2 seconds, and the plaintiff was driving in the darkness, no light ahead.    To require him, under the circumstances, to keep watch backwards for the car and forward for dangers in an unlighted road would practically be to require him "to look both ways at once," which this court declares he could not be expected to do.    Dickson v. Railroad, 104 Mo. 104; Chappell v. Allen, 38 Mo. 221; Rose v. Spies, 44 Mo. 23; Spohn v. Railroad, 87 Mo. 74.    The gravest error in those instructions, however, is in denying a right of recovery to plaintiff in case he was found to have failed to keep a lookout for the car coming up behind, though defendant might have been guilty of the negligence charged.    This is directly contrary to the decisions of this court in the cases of Morgan v. Railroad, 159 Mo. 262; Klockenbrink v. Railroad, 72 S. W. 900.

VALLIANT, J.—A wagon, being driven by plaintiff in the track of defendant's street railroad, was struck and turned over by a street car, the plaintiff was thrown out and injured, and brings this suit for dam-

ages. The trial resulted in a verdict for the defendant, the court sustained the plaintiff's motion for a new trial and the defendant appeals.

The petition states that the plaintiff was driving south in the railroad track after dark when a car of defendant going in the same direction struck the rear end of the coupling pole of the wagon, turned the wagon over and threw the plaintiff out, in consequence of which he was severely injured; that the motorman in charge of the car failed to ring a bell or give any signal of his approach or to stop the car or to take timely steps to stop it, "and that this failure was also due to the bad condition, bad repair and insufficiency of the car, of the brake, chain, shoe-chain, cogwheels and other brake apparatus." The answer was a general denial and a plea of contributory negligence.

The plaintiff's evidence tended to show as follows:

The accident occurred in the northern suburbs near Calvary cemetery. It was after dark and there were no street lights. It was a wagon designed for hauling lumber, it had no bed, it had a long coupling pole which extended ten or twelve feet behind the hind wheels. Plaintiff had discharged a load of lumber near the cemetery and was returning to the city. When he reached the gate at the cemetery he drove into the railroad track and followed it for a distance of about three blocks to the point of the accident. It was the west track, upon which south-bound cars run. The grade is downward from the point at which plaintiff entered the track to the point at which the collision occurred. There are no cross-streets in that vicinity. The car came down the grade at a rapid speed, the plaintiff hearing the noise of the running car looked back and seeing the danger, immediately attempted to pull out of the track, but before his wagon got clear the dash board of the car struck the projecting end of the coupling pole with such force that the wagon was turned over and the plaintiff was thrown out and injured. The point of contact between the dash board

and the end of the coupling pole was a little to the west of the center of the dash board.

The plaintiff testified: "I heard a noise ·behind me, and then I looked back and the car was right upon me and I swung out of the track as quick as I could, and the car caught the coupling pole and turned the wagon over and knocked me out; I didn't know just what happened right after that." He further testified that he kept in the track all the way from the gate of the cemetery to the point of collision, and that he did not look back at all until he heard the car immediately behind him. "Q. After you had started down the street, did you look back at any time to see if the car was coming? A. No, sir, not until I heard this noise. Q. Not until you heard the car and then it was immediately behind you? A. Yes, sir. . . . Q. When you looked back how far was that car behind you? A. As close as I could judge about twenty-five or thirty feet."

The motorman, who was plaintiff's witness, said: "In regard to the collision—well I left the north end of the route at Calvary, coasting down the grade after starting. I do not know just what distance it would be—when the wagon probably went a quarter, something like that, I seen the wagon probably ten or twelve steps, not more than ten steps and it was then in darkness. . . . Q. Did you give any signal at the time you first noticed the wagon? A. No, sir. Q. Ring any bell? A. No, sir. . . . [On cross-examination:] Q. Why didn't you sound the gong when you first saw the wagon? A. I didn't really have time in a case like that. Q. You mean that in forty-five to sixty feet you could not sound the gong? A. No; I don't mean that. Q. Well you say you saw the wagon fifteen or eighteen steps? A. I said steps or feet, I don't mean any more than the distance across this room [presumably referring to the room in which his deposition was being taken]. Q. That would not be over fifteen feet. A. Well, call it fifteen feet, I don't mean any forty-five or fifty

feet.'' This witness testified that there was an electric headlight on the dash board, but that it was not a bright light and could have been seen only ''a block or so'' distant. From the gate at the cemetery to the point of the accident the track was straight. He also testified that the brake was in bad condition. On being cross-questioned to specify the defect, he said that it was so worn that whereas a brake in perfect order would catch the wheel in one and a half turns of the rod, it required four turns to make this brake do its work. He was asked why he did not begin to apply the brake sooner if he knew it took longer than usual to apply it, to which he answered, ''I did not see the wagon in time.'' He at first said that the car had been in the shed that day for repair, but on being more closely questioned on that point said that he only knew that it had been in the shed that day; he drew the inference that it was there for repairs. He had not reported it as out of repair.

This witness was of the opinion that at the instant of the accident the hind wheels of the wagon were in the track, the front wheels being only turned outward. But the plaintiff himself said several times that all the wagon except the end of the coupling pole had cleared the track. ''Yes, sir, the wheels had just dropped over the track. Q. The rear wheels? A. Yes, sir.''

At the close of the plaintiff's testimony the defendant asked an instruction in the nature of a demurrer to the evidence, which the court refused, and an exception was taken.

The defendant's testimony tended to prove that the brake was in good condition and that the car had never been reported as out of repair.

At the request of the plaintiff the court instructed the jury to the effect that if the accident occurred because the car was negligently run against the wagon without notice or warning or the ringing of a bell or other signal, or because there was such a defect in the brake as that it was not sufficient for ordinary use, and

because of such defect the motorman could not stop the car in time to avert the accident, then the plaintiff was entitled to recover, unless under the evidence and other instructions the jury should find that the plaintiff was negligent himself and that his negligence contributed to cause the accident.

The court refused an instruction asked by the plaintiff to the effect that although the plaintiff may have been negligent in failing to look back for the approaching car, "yet if the collision could have been avoided by defendant keeping the brake or brake apparatus of its car in suitable repair and working condition, or by the exercise of ordinary care on the part of defendant's servant in running and operating its car, or in looking ahead to discover persons or wagons on its track, then the defendant is liable in this action."

There were four instructions given at the request of the defendant which we deem it unnecessary to copy into this opinion. The court sustained the plaintiff's motion for a new trial on the ground that it had erred in giving the defendant's fourth instruction.

That the plaintiff was guilty of negligence directly contributing to cause the accident appears from his own testimony. He was not a trespasser on the defendant's track; the track was laid in a public street and therefore he had a right to drive his wagon along it. But in going upon the track he chose the more dangerous part of the street; he could with more safety to himself have driven along the west side of the street, outside the railroad, which the evidence shows was macadamized and adapted for travel. His duty to himself was to use ordinary care to avoid injury, and when he selected the more dangerous part of the street for his use, his care should have been commensurate with the greater danger thus assumed. He knew—the law compelled him to know —that cars were liable to come towards his wagon from behind, and he should have been on the lookout for them, he should have looked in the direction from which he

knew they were liable to come.   It was dark, there were
no street lights there, and that fact should have made
him the more cautious.   There were no street crossings
there—it was in the suburbs—and the sounding of the
street car gong which is usual at street crossings in the
city was not to be expected there.   There was an elec-
tric headlight on the dash board of the car, which, al-
though there was some effort in the plaintiff's evidence
to show was not very bright, could have been seen accord-
ing to his own testimony for "a block or so."   Under
these conditions the plaintiff drove along the track for a
distance estimated at from three blocks to a quarter of a
mile without turning to look in the direction from which
he knew a car was liable to come.   He only looked back
when he heard the car close to him.   If he had looked
back when the car was a block away he would have seen
the headlight, and could easily have driven out of dan-
ger.   Even with the car as close as it was when he did
look he says himself that he succeeded in getting his
wagon all clear of the track except the long end of the
coupling pole.

Granting that the motorman was negligent in not
sounding his gong—that the defendant was negligent in
allowing the car to be in use without a safe brake—that
those facts contributed to the catastrophe—still the ac-
cident would easily have been avoided if the plaintiff had
taken care to look for the car which he knew was liable to
come and seeing it had driven out of the track.

It is doubtful if the evidence shows any negligence
on the part of defendant.   The motorman was not an
unfriendly witness to the plaintiff.   He had been dis-
charged by the defendant and had been on very pleasant
relations with the plaintiff ever since his discharge.   We
do not mean to imply that he was not truthful in his tes-
timony, but only to say that he was not reluctant to tell
anything that he knew that would benefit the plaintiff's
case.   He said that he did not sound his gong, because
he did not see anything on the track until he was so close

to the wagon that he could do nothing to avert the collision. This was a wagon not easily seen in the dark; it had no body, was composed of only the wheels and gearing and was rather of skeleton form. We can not say as a matter of law that the motorman was negligent in not seeing it and therefore in not sounding the gong to warn the driver to move off the track. There was no evidence that the motorman was not looking ahead. He testified that the brake was in bad condition, but when he was required to specify the defect, his testimony was to the effect only that it was so worn that it required two and a half more turns of the rod to set it than it would require if in perfect order. The plaintiff not being in the attitude of a passenger, the defendant owed him the duty only to have a reasonably safe appliance. There was no testimony that the brake even as described by this witness was not reasonably safe.

Respondent contends that the case should have been given to the jury on the theory of his second instruction which the court refused, that is, that the plaintiff was entitled to recover notwithstanding his own negligence.

There is nothing in this case to bring it within the doctrine of Kellny v. Railroad, 101 Mo. 67; Morgan v. Railroad, 159 Mo. 262; Klockenbrink v. Railroad, 172 Mo. 678.

There is no evidence tending to show that with a brake in perfect repair this car could have been stopped in time to avert the accident after the motorman saw the wagon; there is no evidence tending to show that the motorman was not on the lookout, or that he could by the exercise of ordinary care have seen the wagon before he did see it. Plaintiff's own evidence shows that the motorman did everything in his power, after he saw the danger, to prevent the collision. In no view of the evidence was the plaintiff entitled to recover. The court should have given the instruction asked by defendant in the nature of a demurrer to the evidence, but since the

case went to the jury and the verdict was for the right party that should end it.

The order sustaining the motion for a new trial is reversed and the cause is remanded to the circuit court with directions to overrule the motion for a new trial and render judgment on the verdict for defendant.

All concur.