JOHN A. FUNCK, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, October 5, 1908.

1. **STREET RAILWAYS: Collision: Negligence: Humanitarian Doctrine: Demurrer to Evidence.** The evidence in a case of personal injury resulting from a collision of a street car and a wagon is reviewed and held sufficient to send the case to the jury on the humanitarian doctrine, since a motorman operating a car in the nighttime in a populous city must be on the lookout for the safety of persons who might be on the track, and have his car under control so as to prevent any danger that might present itself.

2. **PERSONAL INJURY: Damages: Physical Pain: Worry.** The worry of a sick man is necessarily a part of his pain and may be more distressing than the pain itself.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*John H. Lucas* and *Ben F. White* for appellant.

(1) The court erred in refusing to sustain defendant's demurrer to plaintiff's petition. Cummings v. Railroad, 26 Mont. 434; Kennon v. Gilmer, 4 Mont.

451; Railroad v. Murphy, 46 Tex. 356; Stillwell's Adm'r
v. Land Co., 58 S. W. 696.     (2)   The court erred in
refusing to sustain the demurrer offered by the defend-
ant at the conclusion of plaintiff's evidence, and also
erred in refusing to peremptorily charge at the conclus-
ion of all the evidence that the plaintiff could not re-
cover.    McGauley v. Transit Co., 179 Mo. 585; Hill v.
Railroad, 30 Misc. (N. Y.) 440; Hill v. Railroad, 62
N. Y. Supp. 596; Bryant v. Railroad, 28 Misc. Rep. (N.
Y.) 532; Bryant v. Railroad, 59 N. Y. Supp. 595; El-
lerman v. Transit Co., 102 Mo. App. 295; Warner v.
Railroad, 178 Mo. 125; Hite v. Railroad, 130 Mo. 140;
Hogan v. Railroad, 150 Mo. 1; Zumalt v. Railroad, 175
Mo. 288; Doerr v. Brewing Assn., 176 Mo. 547.     (3)
The court erred in admitting incompetent, irrelevant
and immaterial evidence, offered by the respondent, over
the objection of the defendant.

*Kinley & Kinley* and *Cook & Gossett* for respond-
ent.

(1)    The court did not err in refusing to sustain
any demurrer of defendant to plaintiff's petition.   Don-
ovan v. Railroad, 89 Mo. 147; Parsons v. Railroad, 94
Mo. 294; Goff v. Railroad, 199 Mo. 694; Hughes v.
Railroad, 127 Mo. 447.     (2)   The court did not err
in refusing to sustain the demurrer to plaintiff's evi-
dence or in refusing to peremptorily charge that the
plaintiff could not recover.     Williams v. Stroub, 168
Mo. 347; Zander v. Transit Co., 206 Mo. 445; Langan
v. Railroad, 72 Mo. 398; Shaffstett v. Railroad, 175 Mo.
154; Bechtewoold v. Railroad, 121 Mo. App. 595; Goff
v. Railroad, 199 Mo. 694; Snider v. Railroad, 103 Mo.
App. 574; Bensiek v. Railroad, 125 Mo. App. 121; Con-
rad v. Railroad, 189 Mo. App. 391; Same case, 89 Mo.
App. 534; Noll v. Railroad, 100 Mo. App. 372; Kolb v.
Railroad, 102 Mo. App. 143; Barrie v. Railroad, 102 Mo.
App. 87; Bindbental v. Railroad, 43 Mo. App. 464.     (3)

As to mental anguish. Schmitz v. Railroad, 119 Mo. 277; Roe v. Bank, 167 Mo. 426; State v. Marcks, 140 Mo. 668.

BROADDUS, P. J.—This is a suit against defendant for damages as the alleged result of its negligence whereby plaintiff was injured. The plaintiff's evidence tended to show that on or about February 28, 1903, while he was driving a four-horse team and wagon with a coal oil tank thereon east along Thirty-ninth street in Kansas City, Missouri, which was then unpaved except that part occupied by the tracks of defendant and space between the same, the defendant by its employees approaching him in the rear carelessly and without warning struck said wagon, whereby plaintiff was thrown from his position and was caught on the tongue of the wagon and was dragged some distance and severely injured. Plaintiff's evidence was to the effect that when he entered upon the street in question from Bell street at which time it being dark, he looked to the west for a car and, not seeing one, turned east on Thirty-ninth street, traveling on defendant's south track; that he thought the track was clear, and at a point not to exceed fifteen feet east of Genesse street the rear end of his wagon was struck by one of defendant's cars; that the shock threw him onto the tongue or doubletree of the wagon; and that the team ran away with the wagon while he was in that position. Also the evidence showed that while driving the plaintiff sat in front of the oil tank which came up above his head; that after he looked back when he came onto defendant's track he did not look back again before his wagon was struck although there was nothing to prevent him doing so; that where he got onto the street, it was not quite a block back to the end of defendant's car line; that he could have seen the car if it had been

lighted; and that he did not hear the bell ring, if it was rung, or any noise of a coming car.

It appears that while making the switch for the return trip of the car at Bell street, the trolley pole is turned from the east to the west end of the car, and then the car is started with sufficient force to throw it onto the south track before it reaches the west end of the switch, the trolley being off the wire in the meantime, during which, necessarily, the lights on the car are out.   Consequently, the car is dark twice during the operation, once when the pole is transferred from one end of the car to the other, and once while the switching is going on.  The evidence tended to show that the distance was two hundred and fifty feet from Bell street to Genesse street, which was sixty feet in width, and that it was something over fifteen feet east of the latter where the wagon was struck; thus making the total distance from the latter point to Bell street at least three hundred thirty-five feet; and that, after leaving Bell street for a short distance, the ground is level, and then a descent begins.   It was shown that the cars were carried on the level space with the motive power used to the descent in the track, where the power was released and the car proceeded by the force of gravitation at an increased speed until it struck plaintiff's wagon.   Other evidence will be referred to further on in this opinion.

The judgment was for the plaintiff and defendant appealed.   The plaintiff relies for recovery upon the theory that the defendant's operator saw, or could have seen, his peril in time to have averted striking his wagon. On the other hand, the defendant contended and introduced evidence tending to show that, owing to the darkness, it was impossible for its motorman to have seen the wagon in time to have averted the collision.

The defendant tried the case upon the theory that the plaintiff's injury was the result of his own negli-

gence and he was not therefore entitled to recover, and asked the court to so instruct the jury, which the court refused to do. It may be conceded for the sake of the argument, that there was evidence tending to show that plaintiff was negligent in failing to look back from time to time to see if there was any car approaching, and that his failure so to do, at least, contributed to bring about the collision. The defendant endeavors to support its theory upon the decision in McGauley v. Transit Co., 179 Mo. 583; and cases from other States.

In the case mentioned, the plaintiff sought to recover upon special allegations of negligence, viz.: That the motorman in charge of the car failed to ring a bell or give any signal of his approach, or to take timely steps to stop it, "and that his failure was also due to the bad condition, bad repair and insufficiency of the car in the several respects mentioned." The court held that plaintiff was guilty of negligence in being on defendant's track under the circumstances and, therefore, not entitled to recover. We do not think the case, or others cited, have any bearing on this, for the reason that this case is founded upon the humane doctrine, not that plaintiff was not negligent, but that defendant did discover or should, by the exercise of ordinary care, have discovered plaintiff's peril in time to have avoided the collision, a doctrine that has been asserted and repeated many times by the appellate courts of this State and now is, or should be, recognized as the established law. The latest expression on the subject is found in Everett v. Railroad, 214 Mo. 54, 112 S. W. 486, where many of the cases on the subject are noted and reviewed.

The only question involved in the case was whether the defendant saw, or could have seen, plaintiff's peril in time to have avoided injuring him. Defendant, however, contends that under plaintiff's theory he did not make out a case.

The evidence of plaintiff was that there was a level stretch from the point where he drove onto Thirty-ninth street for about one hundred fifty feet and that there was then a decline of about three per cent to the place where the wagon was struck, a distance of about one hundred feet. The defendant insists that it was a dark night, and not sufficiently light for its motorman to have seen plaintiff in time to have averted his injury. The top of the tank on the wagon was eight or ten feet from the ground, and it was shown that, ordinarily, it could be seen by a motorman at night a distance of from one hundred to one hundred fifty feet, but that at the point in question, owing to the oval rise in the track, it could not be seen from one hundred and fifty to two hundred feet. The car at the time was going at the rate of about eight miles an hour. There were small gas lamps on the different street corners and some light from the houses on the sides of the street, all of which goes to show that the motorman could have seen plaintiff's wagon on the track for a distance of at least one hundred feet. According to the motorman, the car was actually stopped after the attempt was made for that purpose in the distance of eighty-five feet. It was the duty of the defendant's motorman, in operating its car in the nighttime in a populous part of the city, to have been on the lookout for the safety of persons who might be on its track and to have had his car under control for any danger that might present itself. And it is the common knowledge of persons, who are habituated to riding on such cars, that a motorman can, while a car is going at the rate of eight miles an hour, stop it in a distance much less than one hundred feet.

Under the facts, it was the duty of the court to submit to the jury the question whether defendant had performed its duty in the premises in making a proper effort to have avoided the collision after its motorman

saw or could have seen, by the exercise of ordinary care, plaintiff's peril.

What has been said disposes of all the questions raised by defendant except as to the admission of certain testimony. The plaintiff was asked if he was worried on account of his physical condition to which he answered: "Yes, sir, I suffered—I worried because I had no idea that I would ever be able to work again." The worry of a sick man is necessarily a part of his pain, and often more distressing than the pain of the sickness itself. But at most it was but an insignificant error if one, and not such sufficient of itself to justify a reversal of the judgment.

Cause affirmed. All concur.