J. F. CONRAD GROCER COMPANY, Respondent, v. ST. LOUIS & MERAMEC RIVER RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, May 7, 1901.

1. Negligence: DUTY OF MOTORMAN ON STREET CAR. It is the duty of the motorman on a street railway, when he sees a wagon ahead of him on the same track, going in the same direction, to timely warn the driver of the approach of the car, and it is equally his duty, when on account of darkness he is unable to see vehicles or pedestrians that may be on the track, far enough ahead of him to give them timely warning, of the car's approach, to continuously sound the gong in anticipation of their being on the track.

2. ———: ———: CONSTRUCTIVE NEGLIGENCE. And a driver of a wagon on a street railway track under such circumstances has a

right to rely upon the sound of the gong to give him timely warning of the approach of the car, and the failure of the driver to look back is not such contributory negligence as to preclude the right to recovery when defendant collided with the wagon.

3. **Ordinary Care.** Ordinary care is a comparative term, to be measured in each case by the imminence of the danger, or its remoteness from the exercise of the right of which the danger may be apprehended.

4. ———: CITY ORDINANCE. In the case at bar, the city ordinance in recognition of the danger incident to the operation of street cars in a populous city, requires the exercise of a high degree of care by the persons having the operation of street railroads in charge.

5. ———: ———. And the care required is not extraordinary or unreasonable; but is only that ordinary degree of care which the common law requires to be exercised under like conditions.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED..

### STATEMENT OF THE CASE.

The petition alleges negligence on the part of defendant, in that the defendant's car was so carelessly and recklessly managed that the same was run into and against plaintiff's team; that at said time plaintiff's wagon was on defendant's track, and in danger of being struck by a car unless same was slackened in speed, but that defendant's motorman, in spite of the fact that he knew this, or by the exercise of ordinary care might have known it, did recklessly and carelessly propel the car forward and against the wagon.

The petition also alleges that defendant violated the ordinance of the city of St. Louis, section 1275, which requires the motorman to keep a diligent watch for all vehicles either

on the track or moving towards it, and on the first appearance of danger to stop in the shortest time and space possible. The petition further avers that defendant agreed to obey the provisions of said ordinance.

Defendant's answer, after denying generally all the allegations in plaintiff's petition, states that whatever damages were inflicted upon the property of plaintiff were directly caused by the negligence of the driver in charge of the wagon in question, who was then and there acting as the agent of plaintiff, in this, to-wit: That said driver negligently drove his wagon upon the east-bound track of defendant in front of one of its cars, and negligently continued to drive on said track without looking or listening for said approaching car.

The reply filed by plaintiff was a general denial.

Plaintiff's evidence tended to prove that William Wibracht, employed by it as a driver of a delivery wagon, on the third of January, 1900, between six-thirty and seven o'clock p. m., while driving plaintiff's two-horse wagon east on the defendant's track on Manchester road, in the city of St. Louis, the wagon was struck in the rear by a car of defendant, with such force that the horses were thrown to the ground and one of them was killed, and the wagon and harness badly broken and damaged; that Wibracht had been driving on the track about ten minutes before the accident; that the tracks occupied the south side of the road, not leaving room between the south rail and the curb for a wagon, and that on the north side of the road between the north rail and curb there was not room for wagons to pass, and that the custom among drivers was for wagons travelling west to take the north side of the road; that Wibracht was an experienced driver, well acquainted with the roads and streets in the neighborhood of the accident and of the time and speed of the running of defendant's cars; that the motorman did not sound the gong of his car, and that Wibracht did not

hear the car approaching, nor see the flash of its headlight until just a moment before the collision and not in time to turn off the track before his wagon was struck; that there were electric street lamps at either end of the block where the collision took place; that the night was clear, and the wagon could have been seen by the motorman *for a hundred yards or more had he looked;* that Wibracht did not then look back to see if a car was coming, but had looked back about five minutes before and just a moment before the collision, asked a boy who was on the seat with him to look and see if one was coming; that a bright headlight could have been seen by him the distance of a block back; that the horse that was killed was worth $125; that the plaintiff paid $60.50 to have the damages to his wagon repaired and $1.75 for the repair of his harness.

On the part of the defendant, the evidence tended to prove that the space in the road between the curb and the north rail of the track, where the accident occurred, was fifteen feet; that there was a long curve in the road at that point and that the wagon was going out of the curve at the east end when struck; that on account of the curve the wagon did not come within the rays of the headlight of the car until the car was within about forty feet of the wagon; that at that distance from the wagon the motorman first saw it, and that he instantly reversed the power, put on the brakes, and sanded the track, and did all in his power to prevent the collision, but the distance was so short that he was unable to stop the car in time to prevent its running on to the wagon; that he sounded the gong as he crossed and left the crossing of the nearest street west of where the collision took place; that the night was dark and foggy, and that lights from the street lamps did not reach the wagon, and that it was in darkness and unobservable to him until the headlight from the car flashed upon it; that the car was running at a speed of from ten to twelve miles an hour, at which speed it

Conrad Grocer Co. v. Railroad.

could not be stopped short of one hundred feet.

Plaintiff pleaded and put in evidence the following ordinance:

"Sec. 1275, subdiv. Fourth. The conductor, motorman, gripman, driver, or any other person in charge of each car, shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons, or vehicles the car shall be stopped in the shortest time and space possible."

The jury returned a verdict for plaintiff, assessing its damages at $173.25.

Defendant, after unsuccessful motions in arrest and for new trial, appealed.

*McKeighan & Watts* and *Robert A. Holland, Jr.,* for appellant.

The court erred in overruling the peremptory instruction offered by defendant, at the close of plaintiff's evidence, and at the close of all the evidence, and in submitting the case to the jury. The evidence of plaintiff showed that the driver in charge of plaintiff's wagon was guilty of contributory negligence in driving upon defendant's east-bound track for five minutes without looking back to see whether a car was approaching; also in not listening for a car, which the plaintiff's testimony shows could have been heard a block and a half off. Weaver v. Railroad, 60 Mo. App. 207; Fusili v. Railroad, 45 Mo. App. 535; Payne v. Railroad, 136 Mo. 562; Watson v. Railroad, 133 Mo. 246; Baker v. Railroad, 122 Mo. 533; Kelsay v. Railroad, 129 Mo. 362; Bunyan v. Railroad, 127 Mo. 12.

*Lubke & Muench* for respondent.

(1)   Under the contract existing between defendant company and the city, the appellant was bound to see that every person in charge of its cars kept "a vigilant watch" for all vehicles, either on the track or moving towards it, and "on the first appearance of danger" to such vehicle, stop such car "in the shortest time and space possible." Fath v. Railroad, 105 Mo. 537; Senn v. Railroad, 108 Mo. l. c. 152; Jackson v. Railroad, 58 S. W. 32; Schmidt v. Railroad, 149 Mo. l. c. 284, 288. (2)   Even a trespasser upon the tracks of a steam railway is protected against willful or reckless injury by men in charge of trains. Much more should those be protected who have at least an equal right to the use of the right of way. Morgan v. Railroad, 60 S. W. 195, and cases cited in majority opinion.

BLAND, P. J.—At the close of plaintiff's evidence and again at the close of all the evidence, appellant moved the court to peremptorily instruct to find for it. The refusal of the court to so instruct is the first assignment of error appellant makes. The contention is that the admission of respondent's driver, that for the space of five minutes while driving on the track he failed to look back for an approaching car and that he could have seen the car had he looked back, in time to have pulled off the track and avoided the collision, is a confession of such contributory negligence as to preclude a recovery. The road, including that portion occupied by appellant's track, is a public highway and the driver had the same right to move his wagon along it by horse power as did the appellant to move its cars by electric power, with this qualification, however, that it was the duty of the driver, when apprised of the approach of a car, to turn off the track in time to avoid a collision and

not to impede the speed of the car.    The cars are furnished with gongs to be sounded by the motorman in charge, for the purpose of warning teamsters and others, on the track, of the near approach of the cars, and in time to afford them an opportunity to leave the track without delaying the car or exposing themselves to the danger of a collision.    And, it is the bounden duty of the motorman, when he sees a wagon ahead of him on the same track, going in the same direction, to timely warn the driver of the approach of the car, and it is equally his duty, when on account of darkness he is unable to see vehicles or pedestrians that may be on the track, far enough ahead of him to give them timely warning of the car's approach, to continuously sound the gong in anticipation of their being on the track.    The evidence is that there was no other wagon on the road near the place of collision, no evidence that Wibracht's wagon was making any considerable noise, nor that his sense of hearing was impaired, no evidence that there was any unusual noise in the immediate vicinity, in short, nothing to show or tending to show that Wibracht could not, or would not have heard the gong had it been sounded in ample time to have pulled off the track and avoided the collision; in such circumstances there was no pressing necessity for the driver to look back to see if a car was approaching; he had a right to rely upon the sound of the gong to give him timely warning of the approach of the car, and his failure to look back was not such negligence as to preclude respondent's right of recovery.

II.    The appellant assigns as error the giving of the following instructions for respondent:

"1.    The court instructs the jury that by the terms of the Revised Ordinances of the city of St. Louis, subdivision fourth, read in evidence, the motorman and conductor in charge of the defendant's car, which collided with the plaintiff's wagon, were bound to keep a vigilant watch for persons on foot, and vehicles

either on the defendant's track or moving towards it, and upon the first appearance of danger to such person or vehicle, the persons so in charge of defendant's car were bound to stop said car within the shortest time and space possible; and any failure to so keep such vigilant watch and to so stop said car (if defendant's said servants did so fail) was negligence upon the part of the defendant; and if you find such negligence, and that such negligence caused said collision and injury to plaintiff's property, and if the driver in charge of plaintiff's team was exercising ordinary care at the time of and before such injury, as defined in other instructions, then plaintiff is entitled to recover herein.

"2.    If the jury find from the evidence in this case that the street upon which the collision in question in this cause occurred was at the date of such collision an open public street within the city of St. Louis; that at said time the defendant was using the railway and cars mentioned in the evidence for the purpose of transferring passengers for hire from one point to another within said city as an electric street railway; and the jury further find from the evidence that on said day the plaintiff's wagon and team were being driven eastward upon one of the tracks of the defendant laid upon said street; that a car in charge of a motorman and conductor of the defendant company did run into and injure the wagon and team of plaintiff while the same was proceeding upon said track eastward; and the jury further find from the evidence that the defendant's motorman in charge of said car either saw plaintiff's team being driven upon the defendant's track, or would, by keeping a vigilant watch for vehicles, have so seen said horse and wagon upon defendant's track, and in danger of being injured by said car; and that after so seeing said horse and wagon upon defendant's track and in danger of being injured from said car, the defendant's motorman and conductor in charge thereof

Conrad Grocer Co. v. Railroad.

could, by stopping said car in the shortest time and space possible under the circumstances have averted said collision and injury, and neglected so to do; and if the jury further find from the evidence that plaintiff's driver, in driving along and upon said track, exercised reasonable and ordinary care, as the same is defined in other instructions, then plaintiff is entitled to recover, and the jury should find their verdict in its favor.

"4. Even though the jury may find and believe from the evidence that plaintiff's driver was guilty of negligence in driving upon or along the defendant's track at or near the point where the collision in question occurred, yet if the motorman in charge of the defendant's car either saw plaintiff's said team upon said track, or by the exercise of ordinary care would have seen him thereon, and either knew, or would have known, by the exercise of ordinary care, that plaintiff's said team was in danger of injury unless the defendant's said car should be either stopped or slacked in speed; and that, nevertheless, defendant's said motorman failed to stop or slack the speed of said car within the shortest space and time possible after discovering said danger, and that said collision occurred by reason of such failure to stop or slack the speed of said car, then your finding must be for the plaintiff."

The first tells the jury that it was negligence, if the motorman failed to comply with the city ordinance read in evidence to keep a vigilant lookout, etc. As is said in Schmidt v. Ry. Co., 149 Mo. l. c. 284: "The demand for ordinary care requires of a man the full performance of his duty under the particular circumstances." The care to be exercised must always be commensurate with the danger to be avoided. What is more than ordinarily dangerous, requires the exercise of more than ordinary care; that is, the exercise of a higher degree of care, than if the danger were less. Ordinary care is a comparative term, to be measured in each case by the immi-

nence of the danger, or its remoteness from the exercise of the right from which the danger may be apprehended. The city ordinance, in recognition of the danger incident to the operation of street cars in a populous city, requires the exercise of a high degree of care, by the persons having them in charge. The care required is not extraordinary nor unreasonable; but is only that ordinary degree of care which the common law requires to be exercised under like conditions. Schmidt v. Ry. Co., 149 Mo. 269, and cases cited; Fath v. Ry. Co., 105 Mo. 537.

The second and fourth instructions are sanctioned by the cases of Morgan v. Wabash Ry. Co., 60 S. W. Rep. 195, and O'Keefe v. Ry., 81 Mo. App. 387.

III. The error assigned in the refusal of appellant's third and fifth instructions is answered by the first paragraph of this opinion.

IV. Appellant's fourth and refused instruction reads as follows:

"4. The court instructs the jury that the defendant's track at the place where plaintiff's property was injured was itself a warning of danger to the plaintiff's driver and that plaintiff's driver in going upon said track, and while driving upon said track, was bound to recognize such danger and make use of his sense of hearing and of sight; and if plaintiff's driver neglected to do this, but continued to drive upon said track without any effort to ascertain whether a car of defendant was approaching, such action was at the risk of plaintiff's driver, and such conduct was in and of itself negligence."

It is well-settled law here and elsewhere, that it is the duty of one about to drive upon a railroad track, before doing so, to look and listen for the approach of a train or car, and if without doing so he heedlessly drives on the track and is unavoidably injured by coming in collision with a moving locomotive or car,

he can not recover for such injury. But, where no car is in sight or hearing, and one drives on a street railway track in safety, where he has a lawful right to go, and continues along the track, his failure to look behind him for an approaching car is not, under ordinary circumstances, such negligence as will deprive him of a right of recovery, if without warning he is run upon by the car and injured. In such circumstances, the proximate cause of the injury is the failure of the motorman to give warning of the approach of the car in time to allow the injured one to have avoided the danger by driving off the track.

V. Appellant's sixth instruction refused is as follows:

"6. The court instructs the jury that if you believe from the evidence that at the rate of speed at which the car in question was moving just before it struck the wagon driven by plaintiff's driver, the defendant's motorman could not stop said car in time to avert a collision by the exercise of ordinary care and the use of the appliances at his command, after said wagon was discovered, or could have been discovered, on the track by said motorman by ordinary care on his part, then it is your duty to find a verdict for the defendant, even though you may believe also that the car was running at the time of the collision at the highest rate of speed mentioned by any witness."

On the part of appellant, the evidence is, the motorman did not see nor could he see the wagon until he was within forty feet of it, and so near that it was impossible to stop the car in time to prevent the collision. If there was nothing more than this in the evidence tending to prove negligence on the part of the motorman, and if the only duty he owed to persons driving on the track was to stop his car, if possible, after discovering their peril, that instruction should have been given; in fact, a demurrer to plaintiff's evidence should have been sus-

tained; but, as we have seen, more than this was required of him; he should have continuously sounded the gong—had he done so, the probabilities are the accident would not have occurred. His failure to do this was a continuing negligence from the time he left the cross-street west, down to the very instant of the collision, and the plaintiff's evidence is that he could have seen the wagon one hundred yards back if he had looked. The instruction ignores this act of continuing negligence, and was properly refused.

VI. Appellant's seventh refused instruction is opposed to the rule adopted in the cases of Morgan v. Ry. Co., supra, and O'Keefe v. Ry. Co., 81 Mo. App. 386, and was correctly refused.

VII. The ordinance and the instructions following it, which required the motorman, on discovering the danger, to stop his car in the quickest time possible, are criticised by appellant as requiring more than ordinary care and as being for this reason in conflict with the well-settled rules of law, that no more than ordinary care to avoid injury to others is required in the pursuit of any legitimate and useful business. As we have seen, ordinary care is a comparative term. The conditions under which the motorman is required by the ordinance to stop his car in the shortest time possible are such that the danger to life or limb is apparent, impending, imminent and about to fall. To stop the car to avoid such danger the ordinance requires prompt action and the utmost exertion on the part of the motorman in the use of all the means and appliances at his command. Such a requirement in such circumstances is not unreasonable. On the contrary, it demands no more than would be expected of an ordinarily prudent and humane man in like circumstances. This would be but the exercise of *ordinary* care.

Discovering no reversible error in the record, and the judgment under the evidence being for the right party, it is affirmed. All concur.