ZANDER, Appellant, v. ST. LOUIS TRANSIT
COMPANY.

**Division Two, July 13, 1907.**

1. **INSTRUCTION: Singling Out Plaintiff As Witness: Civil Case.** An instruction which tells the jury that "all statements made by plaintiff, if any, which are against his own interests may be taken as true, but his statements in his own behalf are only to be given such credit as the jury under facts and circumstances in evidence deem them entitled to," is erroneous in a civil case. It singles out the plaintiff as a witness and usurps the province of the jury in weighing his evidence.

2. ————: **Looking and Listening: Plaintiff's Evidence: Probative Force.** An instruction which tells the jury that "the fact that plaintiff says he did look and listen for the approaching car and did not see or hear the car, in the absence of some obstacle to prevent him from seeing or hearing, had no probative force to prove that he did look and listen and did not see or hear the car, and such evidence does not entitle him to recover," is erroneous, and under the facts—the night being dark, other witnesses did not see the car, there was no material object to obstruct the view, no witness heard any gong or bell, and the conductor heard the sharp danger signals just before the car ran into the wagon—it cannot be too strongly condemned, for it practically told the jury that no probative force was to be attached to plaintiff's testimony.

3. ————: **Trying to Escape Danger.** An instruction which tells the jury that if "plaintiff, at the time of the accident, was driving his wagon across or out of defendant's track, for the purpose of permitting the car to pass, then, under the pleadings and the evidence and the law, your verdict must be for defendant," could not well be more erroneous.

4. ————: **Wagon on Track: Concurrent Negligence: Proximate Cause: Ordinary Care: Sounding Gong at Crossing.** A railway company has a superior right to its tracks laid in a public street, but that right must be exercised in a reasonably prudent way, and what would be ordinary care in the country on a fenced track would be gross negligence in a populous city, for the driver of a vehicle and every citizen has a right to travel in a public street. It was the duty of the motorman to sound his gong at the last street crossing before reaching the wagon driven by plaintiff, so as to advise him and others of the car's approach; especially was that his duty when the night was dark

and the car was being run at great speed. And so an instruction which told the jury, under such circumstances, that, "while the burden was on defendant to establish the plaintiff's contributory negligence, this did not relieve him of the burden of proving his injuries were solely caused by the negligence of defendant, and if the jury find that the plaintiff's injuries were caused by the mutual and concurring negligence of plaintiff and defendant's motorman, and that the negligence of neither without the concurring negligence of the other would have caused the injury, your verdict must be for defendant," was erroneous, misleading and confusing; for, *first*, when defendant sees, or by the exercise of ordinary care can see, plaintiff's peril caused by his contributory negligence, in time to avoid injuring him, then plaintiff can recover, notwithstanding his contributory negligence; *second*, it forestalls plaintiff's right to recover if he was guilty of contributory negligence to any degree, even though defendant wantonly and recklessly injured him after discovering his peril; and, *third*, it does not require plaintiff's failure to exercise ordinary care to be the direct and proximate cause of his injury.

5. ————: **Looking and Listening All the Time.** An instruction which tells the jury that "if plaintiff drove near or remained dangerously near said railway track, his duty to look and listen was a continuing one and could not be abandoned at any time so long as he remained along and dangerously near said track," is applicable to crossing cases, where a pedestrian or a driver of a vehicle attempts to cross a highway over which a railway runs, or immediately in front of a car, but it is not applicable to the case of a driver of a heavy wagon along a muddy public street, of a dark night, where his duty requires him to give attention to his team, to use proper precaution to avoid holes, and to look out for other vehicles or pedestrians The law does not require him, under such circumstances, to look and listen all the time for an approaching car, but only to exercise ordinary care in that regard. [Distinguishing McGauley v. Railroad, 179 Mo. 583.]

6. ————: ————: **Presumption That Signal Will Be Given.** The driver of a wagon along a muddy public street, full of holes, of a dark night, in a populous part of the city, has the right, even though he in the exigencies of the situation drive on the railway track, to presume that the motorman of a car, approaching from behind, will himself obey the dictates of ordinary prudence and sound his gong at the last street crossing and run his car at a prudent rate of speed.

7. **ORDINARY CARE: Speed of Car.** Ordinary care on the part of a motorman requires that he will run his car at least within the maximum speed prescribed by ordinance, especially of a dark night.

8. ———: **Lookout: Sounding Gong.** Ordinary care also requires him to keep a lookout for persons and teams that may be upon the track, and to sound his gong to notify drivers of such teams of his approach, and when the night is 'so dark that he cannot see whether or not persons or vehicles are on the track, to frequently sound his gong, and to keep his car in hand and under control.

9. **INSTRUCTION: Getting on Track.** An instruction which tells the jury that it is the duty of persons on a street to look and listen for the approach of cars before placing themselves in dangerous proximity to tracks over which street cars are run, is not applicable to the case of a driver of a wagon along a railway track in a public street who, in avoiding holes and in trying to select a safe place in which to drive, at times gets on the railroad track, and ought not to be given. It is applicable to crossing cases, and kindred cases.

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster,* Judge.

REVERSED AND REMANDED.

*Chas. L. Krone* and *Henry A. Rosskopf* for appellant.

(1) An examination of the testimony will show that substantially all of the evidence was brought by plaintiff and made in favor of his case, which, furthermore, was strengthened by nearly all of the testimony brought by defendant and impaired by none. (2) The trial court gave nineteen instructions to the jury covering ten pages of the closely printed matter of plaintiff's very largely paged abstract. This alone, conceding each instruction to be correct, was enough to lead the jury into the quagmires of utter confusion. Sidway v. Missouri Land & Live Stock Co., 163 Mo. 342. (3) The nineteen instructions given were formulated on every theory applicable or inapplicable to the case. Part of them proceeded on the doctrine that defendant was not bound to any care whatever until its servants saw plaintiff on the track, when, for the first time, its duty of ordinary care arose; part of them proceed on

the theory that if plaintiff was crossing or turning out of the track, that fact alone absolutely precluded him from recovery; part of them are predicated on gratuitously assumed evidence that plaintiff was trying to cross the tracks, and "before" doing so, might have been deficient in care in his approach; part of them tell the jury that plaintiff was a competent witness in his own behalf, whose credibility was subject to the usual qualifications, and part tell the jury that his testimony had no probative force. Their perusal raises commiseration in the heart of man. They are not "a mountainous mass of inert matter" (163 Mo. 376), but a veritable Babel of incoherence. (4) Instruction 8 errs in telling the jury that the burden is on plaintiff "of proving that his injuries were solely caused by the negligence of defendant as set out in other instructions." This is not and never was the law. Plaintiffs may possibly be guilty of negligence, without which the injury to them would not have occurred, and may nevertheless recover. Baxter v. Railroad, 103 Mo. 597; Jersey Farm v. Railroad, 77 S. W. 346. (5) Instruction 9 tells the jury that the simple fact, if it was a fact, that "plaintiff was driving his wagon across or out of defendant's track to permit the car to pass," would defeat plaintiff's recovery. In other words, plaintiff's attempt to escape a collision now defeats his right, and he is now doubtless under a duty to stay where he was in order to be struck. (6) Instruction 10 tells the jury that "the fact that plaintiff says that he did look and listen, and did not see or hear the car, in the absence of proof of some obstacle to prevent his seeing or hearing, has no probative force to prove that he looked and listened, and did not see or hear the car, and such evidence does not entitle plaintiff to recover." Is it possible to conceive of anything more erroneous? Payne v. Railroad, 136 Mo. 562;

Hook v. Railroad, 168 Mo. 343; Lamb v. Railroad, 147 Mo. 171.

*Glendy B. Arnold* for respondent; *Boyle & Priest* of counsel.

(1) The verdict is for the right party, and where this is so and plaintiff fails to make out a case, the judgment will be affirmed regardless of errors in the instructions. Nobel v. Blount, 77 Mo. 235; Walsh v. Exposition Assn., 101 Mo. 535. 1. There is no evidence in the record of negligent speed. Petty v. Railroad, 179 Mo. 674; Theobald v. Railroad, 191 Mo. 429. There is no evidence in the record to show in what distance the car could have been stopped running at any given rate of speed. This is fatal to plaintiff's right to recover on the speed charge. Molyneux v. Railroad, 81 Mo. App. 25; Moore v. Railroad, 176 Mo. 528; Fry v. Railroad, 111 Mo. App. 338. 2. "There is no evidence in the testimony which tends even to cast a duty upon the defendant to sound a gong at that point, it not being an intersecting street, and the presence of the wagon on the street not being known." Theobald v. Railroad, 191 Mo. 432. The evidence fails to show that the failure to sound the gong by defendant was the proximate cause of the collision. Heinzle v. Railroad, 182 Mo. 555; Frank v. Railroad, 112 Mo. 496. (2) Even though there is evidence of the negligence charged and submitted, yet it appears from all the evidence without conflict that plaintiff was guilty of negligence contributing directly to his injuries, and where this appears the rule is that the judgment for defendant will not be disturbed because erroneous instructions were given to the jury. Vogg v. Railroad, 138 Mo. 180; McGauley v. Railroad, 179 Mo. 583.

GANTT, J.—This is an appeal from a judgment of the circuit court of the city of St. Louis in favor of defendant. The judgment was rendered at the February term, 1904, and after an ineffectual motion for a new trial the plaintiff appealed to this court. The action is for damages for personal injuries to plaintiff, a teamster, by the alleged negligence of defendant's motorman in charge of one of its street cars, in running said car into the wagon which plaintiff was driving, on the night of December 10, 1902, at a point on South Broadway, a short distance north of Bowen street. The petition in substance alleges the plaintiff was a teamster and on the night alleged was driving a lumber wagon, drawn by two horses, upon and along South Broadway east of the eastern track of defendant's railroad thereon and had reached a point north of Bowen street which intersects Broadway; that no part of his wagon was within defendant's track; that at said date the street was very muddy and in consequence the tracks were invisible at places; that the street was narrow, only about fourteen feet from the track to the sidewalk, and lined with the defendant's poles; that owing to the defective street he was compelled to drive near defendant's east rail; that he was exercising great care and caution in endeavoring to find a safe portion of said street; that while so driving a car of defendant in charge of its servants and employees was run in a careless and reckless manner and propelled at a great and unlawful speed, to-wit, twenty-five or thirty miles an hour, and without the sounding of any gong or bell or giving plaintiff any other signal, was run into plaintiff's wagon, whereby it was overturned and plaintiff thrown violently to the ground and his body entangled in the double-tree and front wheel, and his leg broken and cut, whereby he was put to great expense for medicines and medical treatment and suffered permanent and incurable in-

jury to his damage to the sum of ten thousand dollars.

The answer was a general denial and a plea of contributory negligence in that plaintiff was driving near or on defendant's tracks in front of the approaching car and so close as to render it impossible for the motorman to stop in time to avoid the collision, and in driving upon defendant's track without looking or listening for the approach of cars or having listened or looked in failing to heed when by the exercise of reasonable care he could have avoided the collision.

Reply denied all the new matter.

For the plaintiff the evidence tended to establish the following facts: Plaintiff was a teamster, driving a lumber wagon, and was returning home in the evening of December 10, 1902. He had a skeleton lumber wagon, drawn by two horses, and between eight and nine o'clock at night arrived at a point a little north of Bowen street, on South Broadway. He was going north on the latter street slowly, on the east side, with his left or west wheels alongside of or partly within the east track of defendant's railway, which has a double track there. He had been driving along South Broadway for an hour or more before he was struck at the point last mentioned. The street along this part of his road was rough with holes and rocks in places and he was picking out the best part of the highway. He testified he was listening and looked back several times to see if any car was coming, but could not tell how often he did this, but "it was every now and then." The night was dark and cloudy and the air wet, with the temperature about freezing. He was seated on his wagon and had reached a point some forty feet north of Bowen street when his wagon was struck by a car of the defendant coming up from the rear. The wagon was upset, the tongue forced through the fence to a yard on the east side of the street, one of the horses pushed into the gate there and the

vehicle broken to pieces. His leg was broken and crushed, and he was long disabled and put to expense for drugs and medical attention. He was unable to work at the trial, February 15, 1904, two years after the injury, and the medical witnesses testified to the permanent character of his injuries. He testified that though he listened and looked back occasionally to watch for cars, he did not hear or see anything, and kept on driving. There was one gas lamp at the southeast corner, one at the northwest corner of Bowen street and Broadway, and another on the west side of Broadway, about seventy-five feet north. Gus Bowenschulte, Clarence Luddon and Walter Parent were standing at the southwest corner of Broadway and Bowen streets at the time of the collision. They testified that the night was dark, muddy and wet, and that Broadway around Bowen street is pretty bad, being full of holes. All of these witnesses saw plaintiff on his wagon going north on the east side of Broadway, with the left wheels of the wagon within, and the right wheels without the east rail of the northbound or east track of the defendant.

Bowenschulte testified that "a few seconds after seeing Zander, the plaintiff, I noticed the car coming north, going at a pretty good rate of speed, and noticed the car cross the crossing and just that quick it hit the wagon. I saw Zander as he was crossing Bowen street and the next thing I saw after that was the car about a half block south of Bowen and the wagon a little north of Bowen. The car was going very fast. When I heard the car strike the wagon Zander was a little north of the north crossing of Bowen street."

Parent testified: "When I first saw the car it was about fifty feet south of the south crossing of Bowen street. I had not heard or seen the car before that. At no time did I hear any gong, bell or signal

issue from that car. Having seen the wagon and immediately afterwards seeing the car coming, I thought right away there would be a collision, and I looked for the wagon and when I looked in that direction the car was up to the wagon. The car was running very fast. The collision occurred about fifty feet north of the north crossing. The light at the top of the car was very dim. I did not hear any sound from any gong or bell while the car was approaching Bowen street, or after it passed.'' Bowenschulte testified that he heard no gongs, signals or bells sounded by the motorman, and there was an ordinary headlight. on the top of the car.

Tony Schumacher testified he was walking down Broadway there at the time going south and noticed Zander, but did not hear any signal or see any light on the car. The night was dark and foggy. All of these witnesses testified that the car ran pretty near up to Grundy street, the next cross street north, after the collision. Schumacher also testified that the car was going very fast, about thirty miles an hour. George Ware also testified that he did not hear any bell or signal.

Charles J. Gooding, a witness for the defendant, testified he was a passenger on the car and that just after the car passed over the crossing at Bowen street, the motorman struck three or four sharp alarms on his gong and knowing they were over the crossing, he thought there was something wrong, and in a second after the motorman struck the gong he set his brake very hard, so much so that he took hold of the seat in front of him and in a minute or two a crash came; at that instant he looked up at the window and caught a glimpse of the wagon and pole apparently' turning over; he thought the pole was going through the window and he dodged down. The night was very dark. After striking the wagon the car ran pretty near to

Grundy street.    The block from Bowen to Grundy street is 293 feet and some inches.

George Seib was the conductor in charge and testified "we were going along there that night about 8:40; just about the time we crossed Bowen street, I heard the motorman reverse his car.    I was about the middle of the car and looked out ahead through the window and saw the lumber wagon and that the driver was in the act of getting out of the track.    The wagon was cat-a-cornered, and then we went right up against him and the next thing I saw he was lying outside of the track.    The wagon was turned around upon the sidewalk, and the front pole was sticking through the fence.    The motorman gave one or two taps of the bell, just as he saw it, I suppose, and reversed his car, but by this time he was up against it.    It all happened just about this quick (snapping his fingers). When I first felt the reverse I guess the car must have been about fifty feet or so from the wagon.    We are permitted to run fifteen miles an hour in that part of the city, and just prior to the accident I roughly guess the car was going twelve, thirteen or fourteen miles an hour.    The night was dark and moist.    After the collision part of the fender was found protruding from the center pole, sticking out behind the wagon, which was overturned and broken, and Zander's leg caught between the spokes of the wheel."

Other testimony showed that the left hind hub and wheel of the wagon was broken by the collision. The plaintiff himself testified that his left wheels were not in the track but east of it.    On the part of the defendant, it further appeared on a cross-examination of the plaintiff, that when the plaintiff was several blocks south of Bowen street that night, the motorman in charge of the car just ahead of the one that struck him, cursed and abused him without any provocation; that he did not provoke the motorman by obstructing

the passage of the car by driving in the track. William Du Pratt, the motorman of the said car, testified that he was forced to make a dead stop coming within a foot of striking the plaintiff's wagon several blocks south of the place of the accident; that the plaintiff was trailing the tracks with all four of the wheels running on the flanges of the rails; that the night was so dark that plaintiff could not be seen until they were right on top of him; that he remarked to the plaintiff, "You had better look out down there, we cannot see you and you are going to get hit some day," and for this advice he received curses from the plaintiff.

On the part of the plaintiff the court instructed the jury, "That if they believe from the evidence that on the 10th day of December, 1902, plaintiff was driving a team and wagon, in a northerly direction on South Broadway, along and so near the eastern track of the defendant's double street railway line there located on, along and over a part of the street immediately adjoining the eastern rail of said track, and over which the bodies of defendant's cars operated on said line in passing necessarily protruded, and that while so driving his wagon was struck by a car of the defendant company, operated in due course of its business by its servants, running upon said eastern track and traveling in the same direction as plaintiff; and if you further believe from the evidence that the servants of defendant company in charge of said car operated it at a great rate of speed and failed to sound any gong or give any signal, or in any other manner warn plaintiff of the approach of said car, in time to enable plaintiff to clear the track and avoid the injury, and that such failure on the part of said servants was under all the circumstances negligence on their part, and directly contributed to, and was the approximate cause of the collision, and that plaintiff was in

the exercise of ordinary care, then your verdict must be for plaintiff.''

The court further instructed the jury, ''That the plaintiff, as well as defendant, had a right to use that part of the street occupied by the tracks of the defendant company, but it was the duty of the plaintiff to exercise ordinary care upon his part in the use of his faculties in driving along the track of the defendant company, and that it was his duty to vigilantly watch for the sound of any gong or bell or any sign, signal or warning of the approach of a car from his rear, and this duty was a continuing one, not to be negligently abandoned or ignored by plaintiff at any time after driving upon or along said track, and if the jury find that such signal or warning of such approach was given in time for plaintiff, by the exercise of ordinary care, to have avoided the collision, and that plaintiff did not exercise such care in keeping watch for such sound, signal or warning or that after he did he failed to heed such warning, and by failure to exercise ordinary care in watching, or failure to watch or to heed what he saw or heard, that he thereby directly contributed to the collision, and if the servants of the defendant were unable to stop said car from striking said wagon with the means and appliances at hand for that purpose when they discovered plaintiff along the side of the track or ahead of them, they would find for the defendant, but if they find that no such sound or gong or bell or signal or other warning of an approaching car was given in time to enable plaintiff by ordinary care to avoid the collision, or that such warning was given, but that, despite any negligence on the part of the plaintiff, if any, the servants of the defendant company saw, or by the exercise of ordinary care could and should have seen plaintiff near the tracks ahead in time to have avoided collision by the exercise of ordinary care on their part in the use of

the appliances at hand then they should find for the plaintiff; provided, that they find the further facts set out in instruction No. 1.''

The court also gave the ordinary instruction defining ordinary care, and also instructed the jury that although they should find that the plaintiff was guilty of negligence, if the servants of the defendant company operating said car saw plaintiff with his team and wagon in his position along, or near the track, or by the exercise of ordinary care on their part could or should have seen him in said position and that the same was dangerous, in time to have averted the collision with the appliances at hand for that purpose, by the exercise of ordinary care on their part, but failed to do so, then they must find for the plaintiff.

The court also instructed as to the elements of damage.

For the defendant the court instructed the jury that the acts of negligence charged against the defendant were, first, that the defendant's car was propelled at a great and unlawful rate of speed, to-wit, at twenty-five or thirty miles an hour. And second, that defendant's employees in charge of its car had failed to ring the bell or give other signal of the approach of defendant's car, and the burden was upon the plaintiff throughout the case of establishing, by the preponderance or greater weight of the evidence, one or more of said acts of negligence, and that such negligence was the direct, proximate and efficient cause of plaintiff's injuries, and, unless he had done so, he was not entitled to recover. And secondly, that it was the duty of those operating street cars to exercise ordinary care to avoid injuring people, but it was also the duty of persons upon the street to exercise ordinary care to avoid injury from the cars and to look and listen for the approach of cars before placing themselves in dangerous proximity to the track upon which said cars

were run. Third, that before, or under any circum-
stances, the plaintiff could recover, the law compels
him to prove by the preponderance of the evidence
that his team was in dangerous proximity to the car
track, and that after and while said team was in such
a situation it was, or could by the exercise of ordi-
nary care, have been seen by the motorman in charge
of the car in time to have avoided the collision, by
the exercise of ordinary care, and if they found from
the evidence that it was a dark night and because of
the darkness of the night an ordinarily careful person
in charge of the car could not by the exercise of ordi-
nary care have discovered a wagon and team like the
plaintiff's wagon and team as shown by the evidence
before coming into dangerous proximity to said wagon
and thereby rendering it impossible for a reasonably
prudent person, by the exercise of ordinary care with
the appliances at hand, to have avoided a collision,
then plaintiff could not recover. In its fourth instruc-
tion for the defendant, the court instructed the jury
that the law compelled the plaintiff to look and listen
before driving his team dangerously near defendant's
track and if they found that he drove dangerously near
or along defendant's tracks and after driving danger-
ously near, or on said tracks, if they found that he
did so drive, his duty to look and listen was a con-
tinuing one and could not be abandoned at any time
so long as he remained along or dangerously near said
tracks, and if from the evidence, the plaintiff could
by looking and listening while driving along or near
defendant's tracks, if he did so drive, have avoided the
accident, the plaintiff could not recover, unless he
proved by the greater weight of the evidence that de-
fendant's servants could by the exercise of ordinary
care have seen plaintiff's wagon dangerously near de-
fendant's tracks in time, by the exercise of ordinary
care, to have stopped the car, and thereby avoided the

collision, and that after seeing the plaintiff near the
tracks, or after they might by the exercise of ordinary
care, have seen his wagon near the tracks, defendant's
motorman then failed to exercise ordinary care in
stopping his car before it struck the wagon. In in-
struction numbered 5, the court instructed the jury
that if they found from the evidence that there was
a long pole protruding over the tracks of the defend-
ant from the rear of the wagon on which plaintiff was
riding, and that the wheels of the wagon were clear
of defendant's tracks sufficient to allow the car to
pass and that because of the darkness of the night it
was not possible for defendant's motorman to see said
pole in time, by the exercise of ordinary care, to have
avoided the collision, and that because of the inability
of defendant's motorman on account of the darkness
of the night to see the pole of said wagon, if they found
there was a pole protruding therefrom, the defendant's
motorman ran into said pole and thereby caused the
plaintiff's injuries, then plaintiff was not entitled to
recover. In the 6th instruction for defendant, the
court told the jury that if they found from the evi-
dence that plaintiff drove his wagon dangerously near
defendant's track in such close proximity to defend-
ant's car as to render it impossible for the motorman,
by the exercise of ordinary care and with the ap-
pliances at hand, to stop his car before it struck the
wagon, then he was not entitled to recover. In the
7th instruction, the court told the jury that notwith-
standing they might find from the evidence that de-
fendant's car was operated at an excessive rate of
speed, still if the plaintiff by the exercise of ordinary
care in looking and listening could have seen or
heard said car in time to avert collision with it, and
either did not so look or listen and for that reason
did not know of the approach of the car, or if know-
ing of the approach of the car turned towards the

track upon which it was running, then plaintiff was
not entitled to recover, because of the excessive speed
of the car. By the 8th instruction for defendant the
jury were directed that while the burden of proof
was on the defendant to establish the contributory neg-
ligence of plaintiff, this did not relieve the plaintiff
of the burden of showing that his injuries were caused
solely by the negligence of defendant as set out in
the other instructions; that the burden of proving these
facts rested upon plaintiff throughout the whole case,
and if the injuries of plaintiff were caused by the
mutual and concurring negligence of plaintiff and
the defendant's motorman in charge of said car as
defined in the other instructions, and that the negli-
gence of neither, without the concurring negligence
of the other, would have caused the injury, then the
verdict must be for the defendant. By the 9th in-
struction for defendant the jury were instructed that
if they found that the plaintiff at the time of the acci-
dent was driving his wagon across or out of defend-
ant's track, for the purpose of permitting the car
to pass, then, under the pleadings and the evidence and
the law, the verdict must be for the defendant.

The 10th instruction for the defendant was in
these words: "If the jury find from the evidence that
the car could have been seen or heard by the plaintiff
in time to have avoided the collision, had he looked
or listened, then the fact that the plaintiff says he
did look and listen and did not see or hear the car,
in the absence of proof of some obstacle to prevent his
seeing or hearing, has no probative force to prove that
he looked and listened and did not see or hear the
car, and such evidence does not entitle the plaintiff
to recover."

And the 11th instruction is as follows: "The
court instructs the jury that while the plaintiff was a
witness in his own behalf, the jury are the sole judges

of his credibility. All statements made by him, if any, which are against his own interest may be taken as true, but his statements in his own behalf are only to be given such credit as the jury under all the facts and circumstances in the evidence deem them entitled to.''

Under the instructions the jury found the verdict in favor of the defendant. Within four days thereafter, the plaintiff filed his motion for a new trial, in which he assails the instructions of the court for the defendant as erroneous, contradictory and inconsistent and highly prejudicial to the plaintiff and not based on the evidence, and because they are a comment on the evidence and are based upon facts assumed of which there was no testimony, and because they singled out one witness and commented on the probative force of his testimony.

I. The 11th instruction given for the defendant was erroneous in that it singled out the plaintiff as a witness and usurped the province of the jury in weighing his evidence. This instruction was disapproved in Montgomery v. Railroad, 181 Mo. 477; Conner v. Railroad, 181 Mo. 1. c. 415 and 417; and Ephland v. Railroad, 137 Mo. 1. c. 198. Such instructions in civil cases are a direct comment upon the weight of the plaintiff's testimony, and are not to be tolerated. This particular instruction received full consideration in Conner v. Railroad, 181 Mo. 415, et seq., and it is not necessary to discuss it further.

II. But if the foregoing instruction was erroneous far more so was the instruction numbered 10 for the defendant, which told the jury that the fact that plaintiff said that he did look and listen and did not see or hear the car, in the absence of some obstacle to prevent his seeing or hearing, had no probative force to prove that he did look and listen and did not see or hear the car, and such evidence did

not entitle him to recover. In the first place it was
agreed by all the witnesses both for the plaintiff and
for the defendant that it was a very dark night, and
the witnesses for the plaintiff testified that they did
not see the car until just a moment before the impact.
The facts of this case are entirely unlike those in
which this court has said that if a man looked and
listened it was impossible as a physical fact for him not
to have seen the approaching car or train, such as
Payne v. Railroad, 136 Mo. 562; Hayden v. Railroad,
124 Mo. 566, and other cases similar in their facts.
Nor was his evidence in the light of all the other testi-
mony in regard to his hearing the car, so incredible
that the court should have told the jury that his testi-
mony that he did not hear it had no probative force,
for such was the practical effect of the instruction,
inasmuch as there was no physical obstacle between
them and the car approaching him from the rear.
None of the other witnesses heard any signal or warn-
ing by gong or otherwise of the approaching car, and
even defendant's own conductor and the passenger who
testified for the defendant only heard the sharp shrill
danger signals just before the car was about to run
into the wagon. Again, it must be said in regard to
this instruction just as has been said about instruc-
tion numbered 11, that it was wholly vicious in its
comment upon the plaintiff's testimony, and cannot
be too strongly condemned when all the facts in evi-
dence are considered.

III. Instruction numbered 9 directed the jury
that the simple fact that if the plaintiff at the time of
the accident was driving his wagon across or out of
defendant's track for the purpose of permitting the
car to pass, then, under the pleadings and the evi-
dence and the law, the verdict must be for defendant.
Compressed into its smallest compass this instruction
required the jury to find for the defendant if the plain-

tiff was attempting to escape a collision by driving his wagon out of defendant's track so as to permit its car to pass his wagon. Comment is unnecessary on this instruction; its error is too obvious and apparent to require any discussion. Standing alone unqualified it could not well be more erroneous.

IV. The 8th instruction, as will be seen by reference to it, told the jury that while the burden was upon the defendant to establish the contributory negligence of plaintiff, this did not relieve the plaintiff of the burden of proving that his injuries were solely caused by the negligence of the defendant, and that if the jury found from the evidence that the plaintiff's alleged injuries were caused by the mutual and concurring negligence of plaintiff and defendant's motorman, and that the negligence of neither without the concurring negligence of the other would have caused the injury, then their verdict must be for the defendant. The defendant may be liable even if the accident was not caused by its sole negligence. While it may be conceded that the defendant has a superior right to its tracks, it must be remembered its tracks are laid in a public highway where every citizen has a right to travel and it often occurs that these tracks are necessarily occupied by other vehicles and what would be ordinary care in the country on a fenced track, which the public do not frequent, would be gross negligence in a populous city. Its paramount right must be exercised in a reasonably prudent manner. [Moore v. Railroad, 126 Mo. l. c. 274.] And, as was said in Klockenbrink v. Railroad, 172 Mo. l. c. 687: "And while defendant argues that it was negligence for the plaintiff at that hour of the night to drive with his wheels inside of the rails, it is equally open for the plaintiff to argue that it was reckless conduct on the part of the motorman to run his car at the rate of at least fifteen miles an hour on a public

street at night without having his motor and brakes well in hand to prevent injury to those who might be lawfully compelled to use the street at that time." In Hilz v. Railroad, 101 Mo. l. c. 54, it was said by this court: "If the failure to so discover him was the result of the omission of that measure of duty which the law requires in view of the locality, circumstances and dangers to be anticipated, and the due observance thereof would have enabled the persons in control of dangerous agencies of this sort to have avoided the injury by the use of reasonable care, then and in such case, such omission and want of reasonable care is, under the law, held the proximate cause of the injury, and liability for the resulting damage may then exist, notwithstanding the negligence of the person injured." By reference again to the instruction, it would be seen that it simply requires the concurring negligence of plaintiff and the defendant's motorman in charge of said car and that the negligence of neither without the concurrence of the negligence of the other would have caused the injury, to defeat the plaintiff. This instruction does not require that the plaintiff's failure to exercise that reasonable care which an ordinarily prudent person would have exercised under like circumstances, directly contributed to produce the injury or was the proximate cause thereof. The contention of the defendant then, in effect, is that if the plaintiff is guilty of contributory negligence to any degree, he cannot recover, even though the defendant recklessly and wantonly injured him after discovering his peril, and when by the exercise of ordinary care, it could have prevented harm to him. When a defendant sees, or by the exercise of ordinary care can see, the peril of the plaintiff caused by the latter's contributory negligence, in time to avoid injuring him, then plaintiff can recover, notwithstanding his contributory neg-

ligence. This is now the accepted and settled excep-
tion to the general rule that plaintiff's own contribu-
tory negligence bars a recovery. In Oates v. Railroad,
168 Mo. l. c. 544, it was said by this court: "The sum
of the adjudicated cases bearing upon the relative
rights and duties of street cars and citizens traveling
in vehicles drawn by horses or other animals is, that
both have a right to use the street, but that neither has
an exclusive right. . . . Because a street car carries
more people than any other kind of conveyance, or be-
cause it is authorized to run more rapidly than a ve-
hicle can ordinarily be legally driven, or because the
rush and restlessness of the age make unreasonable
demands for more and more rapid transit along the
crowded thoroughfares of populous cities, it does not
follow that a street car can be run in disregard of the
rights of persons traveling by other means, nor that a
street car company is exempt from the common-law
duty of every one to exercise ordinary care, nor that
it is only liable where its agents act wantonly, mali-
ciously and heedlessly." While it was plaintiff's
duty, if the condition of the street was such that he was
required, in order to safely pass over it, to drive with
his left wheels on or inside of the east rail of defend-
ant's track to keep a reasonable lookout for cars that
might approach him from the rear, it was also the duty
of the motorman in charge of defendant's car to sound
his gong at the crossing of Bowen street and before
reaching it so as to apprise pedestrians or drivers of
vehicles that might be on the track of his approach
and especially as it was a dark night and he was there-
by unable to see persons or vehicles any considerable
distance ahead of him, and hence this instruction was
misleading under the evidence in the case whether we
view it from the defendant's or the plaintiff's stand-
point. Moreover, this instruction was entirely unnec-

essary and confusing, because the court had already instructed the jury upon the relative rights of the defendant and the plaintiff on the street at that hour of night and under the facts in evidence, in the second instruction given for the plaintiff, and could serve no good purpose in giving the jury a proper guide to their verdict.

V. In instruction four for the defendant, the court told the jury that if the plaintiff drove near or remained dangerously near said tracks, his duty to look and listen was a continuing one and could not be abandoned at any time so long as he remained along or dangerously near said track. And plaintiff assigns this instruction as error. The doctrine invoked by the defendant in this case, and which met the approval of the circuit court, is applicable to *crossing cases* where a pedestrian or a driver of a vehicle attempts to cross a highway over which a railroad runs, but, as said by Judge MARSHALL in Schafstette v. Railroad, 175 Mo. l. c. 151, the law does not apply to or fit the conditions presented by this case. The plaintiff did not attempt to cross the track in such close proximity as to be struck by the car before he could cross, nor immediately in front of the train. According to the defendant's own evidence, the plaintiff had been traveling on this street and on these tracks at least partially for several blocks, and if on account of the darkness of the night, the motorman was unable to see the wagon of the plaintiff far enough ahead of him to give plaintiff a timely warning of the car's approach, a very slight degree of care required that he should have sounded his gong, if not continuously, at least often enough to apprise travelers who might be upon the track, of the coming of the car, nor was the plaintiff precluded from a recovery because he did not look and listen all the time. As said by this court in Petersen v. Railroad, 199 Mo. l. c. 340, "We know of no inexorable rule of

law that requires a traveler going along a public street of a city on which a street railway track is laid to look behind him for an approaching car, of which he has no warning and of the proximity of which he has no knowledge.'' In this instruction, the plaintiff was required to abandon all care for the safety of his own team and vehicle and himself in looking to the front to avoid collision with other travelers who might be coming in the opposite direction, and to avoid the mud holes and poles along the street and devote himself entirely to looking in the rear for cars of whose approach he had no warning whatever. In the second instruction given for plaintiff, the court told the jury that his duty to vigilantly watch for the sound of a gong or bell or warning of the approach of the car from the rear, was a continuing one not to be negligently abandoned or ignored by the plaintiff while on the track. Which is a very different proposition from that announced in this instruction now under consideration. The plaintiff had a right to drive along the street and even drive upon the track of the defendant if the condition of the street or the exigencies of the case required it, and he should have exercised ordinary care in listening for the gong or signal of an approaching car from the rear and if he heard one to have withdrawn his wagon from the tracks. And it was also his duty, if by looking, he could have seen a car approaching from the rear, to have gotten off of the tracks to let it pass. But in view of the evidence in this case that the night was so dark that he could not see the car, and the street was so out of repair that he was compelled to use a portion of the track, he was not required to abandon all the ordinary precaution of a traveler upon a public highway and cease altogether to look to the front lest, forsooth, a street car motorman might be regardless of his duty in sounding a gong or giving any signal, especially at the crossing of a cross street, as Bowen

street was, of his approach, or might be running in excess of the speed allowed by ordinance. On the contrary, he had the right to presume that the motorman of the street car, under such circumstances, would himself obey the dictates of ordinary prudence and sound his gong and run his car within the prescribed speed. This instruction was not only not applicable to the facts in evidence, but is a misstatement of the law and inconsistent with the second instruction given for the plaintiff. In reaching these conclusions we have not ignored the decisions in McGauley v. Railroad, 179 Mo. 583, and Theobald v. Railroad, 191 Mo. 395. The Theobald case rests upon the McGauley decision, and reference to the facts upon which the McGauley case is based will show that this court in that case held that the driver of a wagon on a street railway track in a public highway, is not a trespasser, but is bound to use ordinary care to avoid being struck by the cars. In that case the plaintiff was traveling in the suburbs of a city where there were no street crossings and the plaintiff in his own testimony stated that he had driven upon the track for three blocks without looking back at all to see if a car was approaching him from the rear. And there was parallel to the railroad a good macadamized street or road adapted to travel, there were no street lights there along his route, and there was a bright headlight on the dashboard of the car and a car approaching him from the rear ran into him and injured him. The motorman testified he did not sound his gong because he did not see anything on the track until he was so close to the wagon that he could do nothing to avoid the collision. The court in summing up the evidence states that there was no evidence tending to show that the motorman was not on the lookout, or that he could by the exercise of ordinary care have seen the wagon before he did see it, and the plaintiff's own evidence shows that the motorman did everything

in his power, after he saw the danger, to prevent the collision. The jury returned a verdict for the defendant and this court held that, upon the evidence, the plaintiff was not entitled to recover. It is at once apparent that that case was decided upon its exceptional facts, and that they are widely different from the facts in this record. Here the car was running in a densely populated part of the city where there were cross streets, and plaintiff had just crossed one of these cross streets, Bowen street, and the motorman, according to all the evidence, had not sounded his gong or warning signal before or at that crossing, and in this case the evidence was that the plaintiff did look back from time to time to see if a car was approaching from the rear, and, moreover, the condition of the street was such that he was compelled, in avoiding the holes and ruts, to occupy a part of the track for the safety of himself and his team, and had the defendant's motorman given the ordinary signals, which the law requires at the crossing at Bowen street, the plaintiff could have withdrawn himself from the track. Moreover, there was ample evidence, notwithstanding the contention of defendant's counsel to the contrary, that the car was being run at an excessive rate of speed. While defendant's counsel insists that the evidence of the witness that the car was going twenty-five miles an hour is entitled to no probative force, the fact remains that all the witnesses for the plaintiff testified the car was going very fast and the testimony shows that even after striking the wagon and knocking it off of the track, it ran nearly a block before it was brought to a stop, and the evidence shows that the block was about 293 feet or more in length. We are not called upon, upon the facts of this case, to either approve or disapprove all that was said in the opinion in McGauley v. Railroad, but merely to point out that neither that case nor the Theobald case was similar in its facts to those

presented in this case for our consideration. In the
Theobald case, Judge MARSHALL, speaking for the
court, said: ''The deceased was not a passenger on
the car, neither was he a trespasser on the track, there-
fore, the obligation of the defendant was to use ordi-
nary care to prevent injuring him; and the correlative
duty of the deceased was to use ordinary care to avoid
being injured.'' And this, we think, is a correct state-
ment of the law, and as we understand the law, ordi-
nary care on the part of a motorman in charge of a
street railway car at least requires that he run his car
within the speed prescribed by ordinance and to keep
a lookout for persons and teams that may be upon his
track and to sound his gong to notify persons in charge
of teams which may be upon the track of his approach,
and when the night is so dark that he cannot see
whether persons or vehicles are on the track to fre-
quently sound his gong that they may be apprised of
his coming, and to keep his car well in hand and under
control. [Conrad Grocer Co. v. Railroad, 89 Mo. App.
391.]

VI. Instruction number two given for defendant
is challenged because it tells the jury that it is the duty
of persons on the street to look and listen for the ap-
proach of cars before placing themselves in dangerous
proximity to tracks over which cars are run. As al-
ready said, this is not a crossing case nor is it a case
where the plaintiff attempted to cross the track in such
close proximity to a moving train or car as to be struck
thereby before he could cross, nor is it a case where
he stepped or drove in front of a train, but on the con-
trary the whole evidence showed that he had been driv-
ing along these tracks for a long time before the col-
lision. This instruction, however proper it might be
in a case in which the facts would justify it, ought not
have been given. This case is an example of the mis-
take which the trial courts sometimes indulge in giv-

ing a large number of instructions at the request of the parties, when one or two very simple instructions applicable to the facts of the case would better suffice and at the same time give the jury a clear and distinct understanding of the issues they were to try and the principles of law by which they are to be governed in reaching their verdict.

In our opinion the instructions above examined on the part of the defendant were misleading and the verdict of the jury must be ascribed to them. Accordingly, the judgment must be reversed and the cause remanded for a new trial in accordance with the views herein expressed.

*Fox, P. J.,* and *Burgess, J.,* concur.