[Civ. No. 3872. Second Appellate District, Division Two.—December 12, 1922.]

W. A. SIMMONS et al., Respondents, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), et al., Defendants; FRED WALKER, Appellant.

[1] NEGLIGENCE—DRIVING VEHICLE ASTRIDE TRACKS—FAILURE TO LOOK BACK.—It is not negligence *per se* for one to drive a vehicle astride of or in close proximity to street-car tracks; neither is it negligence *per se* for one who is driving his vehicle astride of or in close proximity to a street-car track to fail to keep constant watch behind for an approaching car.

---

1. Law of road as to automobile and street-car traveling in same direction, notes, Ann. Cas. 1913E, 1121; 21 L. R. A. (N. S.) 309.

[2] Id.—Use of Public Highway—Rights of Street Railway and Vehicle Driver.—Public highways are for the use of the traveling public, and the right of a street-car company is only to use the street in common with the public. A railway company has no exclusive right to travel even over that portion of the street which is covered by its tracks; but other vehicles have the right to travel over the entire street, including the space between the tracks.

[3] Id.—Duty of Vehicle Driver With Respect to Street-cars.— As one of the traveling public, the driver of an automobile is entitled as of right to use the entire street, subject only to the limitation that, as the use of the street by the railway company is confined to its tracks, the driver must not unnecessarily interfere with or obstruct a car in its movement thereon.

[4] Id.—Duty of Driver to Turn Off Tracks.—Although it cannot be said that one who is driving a vehicle along or in close proximity to a street-car track is in duty bound to keep a constant watch behind for approaching cars, it is his duty to turn off or away from the tracks when he sees or hears, or by the exercise of reasonable care should see or hear, a car approaching from the rear. He should listen for and he should heed whatever signal there may be of an approaching car.

[5] Id.—Sounding of Gong—Failure to Avoid Collision—Concurrent Negligence—Evidence.—In this action against an interurban electric railway company and the operator of a line of autobusses for damages for personal injuries sustained by a passenger in one of the busses of the latter defendant when that bus was run into by a car of the former, although the bus driver and other witnesses testified that they did not hear any bell or gong sounded by the motorman, there was no evidence that they listened, and the testimony of the motorman to the effect that he rang his gong a distance of nine or ten blocks to the place where the accident occurred, and the testimony of a passenger on the electric car that the car kept at its regular speed, that he observed it gradually overtaking the bus, that his attention was called to it by hearing the motorman ring his gong twice, and that after hearing this signal he did not suppose the bus would keep on the same way, but that it did, presented a situation justifying the conclusion that the servants of both defendants were concurrently negligent—the motorman because he did not slacken the speed of the interurban car and the bus driver because he did not heed the signal to get off the track.

[6] Id.—Driving Astride Rails—Degree of Care Required.—When the driver of the motor-bus chose to travel astride the rails of the interurban electric railway company, his care should have

been commensurate with the greater danger then assumed; and when he failed to exercise the utmost care to hear the warning signal of the car approaching from the rear and to turn off and away from the tracks as soon as the diligence commensurate with the high degree of care which he owed to his passengers would permit, his want of due care was a proximate contributing cause of the collision and of the consequent injury to plaintiff.

[7] ID.—NEGLIGENCE OF DRIVER — IMPUTATION TO PASSENGERS. — The negligence of the driver of a public conveyance in which passengers are being carried for hire is not imputable to the passengers.

[8] ID.—GIVING OF WARNING—FAILURE TO DECREASE SPEED.—The mere fact that the motorman gave timely warning by ringing his gong did not relieve the railroad company from blame, where the motorman was guilty of negligence by failing to decrease the speed of his car in time to avoid a rear-end collision after it became apparent that the driver of the bus was not going to turn off in time to avoid a catastrophe.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Wellborn, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. H. Thomas and B. P. Gibbs for Appellant.

E. B. Drake for Respondents.

FINLAYSON, P. J.—Plaintiffs, who are husband and wife, brought this action to recover damages for injuries suffered by the wife in a collision between an electric interurban car operated by the defendant Railway Company and an autobus or jitney operated by a servant of the defendant Walker—a carrier of passengers for hire. Mrs. Simmons was a passenger on the autobus. Walker and the Railway Company were made defendants on the theory that the negligence of each concurred in causing the injury. The jury returned a verdict against both defendants, who, upon different records, present separate appeals from the judgment. The appeal now to be considered is that of the defendant Walker.

7. Negligence of driver as imputable to passenger, notes, Ann. Cas 1918C, 961; 8 L. R. A. (N. S.) 597; L. R. A. 1915A, 761.

The collision occurred on Santa Monica Boulevard, between Twenty-fifth and Twenty-sixth Streets, in the city of Santa Monica, while both the bus and an interurban car of the Railway Company were proceeding easterly toward the city of Los Angeles. Mrs. Simmons had boarded the bus at Third Street and Santa Monica Boulevard. According to appellant's witnesses the catastrophe, which was a rear-end collision, was caused by the interurban car crashing into the rear of the bus while that vehicle was traveling easterly along Santa Monica Boulevard astride of the southerly car rail, and after it had traveled in this manner for a distance of about four blocks from Twenty-first Street, where it had stopped at the curb to take on a passenger.

The Railway Company operates an interurban railway from the city of Santa Monica to the city of Los Angeles, and for that purpose it uses double tracks along Santa Monica Boulevard. That highway runs in a general easterly and westerly direction, is graded and has a width of fifty-two feet between the curbs. The distance between the south curb and the nearest rail is seventeen and one-half feet, affording ample space between the curb and the railroad tracks to accommodate automobiles and other private vehicles. But there is quite a slope from the southerly rail to the curb. This slope is so marked that it is the custom of many automobilists traveling over the boulevard to keep as near as possible to the center line of the highway, even though by doing so they "straddle" the street-car rail.

At the trial each defendant sought to show that the negligence of the other was the proximate cause of the injury. Appellant concedes that the evidence might show one or the other of the defendants to be negligent and hence liable for the injury, but claims that the evidence is such that it is not possible that both could be guilty of negligence. Whether, therefore, the evidence will support a verdict against both defendants is the sole question presented by this appeal.

Appellant's theory of the accident: According to the testimony of witnesses for appellant, the driver of the autobus, after taking on the passenger at Twenty-first Street, looked once to see if any interurban car was coming toward him from behind. Seeing none, he started up his vehicle, drove it diagonally a distance of about forty feet toward the center

of the highway until its left wheels were astride of the southerly rail, when he straightened the wheels, and then, with his bus still astride of the rail, proceeded easterly along the boulevard at the rate of fifteen miles an hour for a distance of about four blocks, when an east-bound interurban car of the Railway Company, which was following the bus and which had been steadily gaining on it, crashed into the rear of the latter vehicle without giving any warning of its approach. The driver of the bus testified that he drove the four blocks astride the rail "because it was more comfortable for the passengers and also for the driver." The driver does not claim that he looked behind him to see if perchance a car of the Railway Company might be approaching from the rear, save on the one occasion when, as he drove diagonally from the curb at Twenty-first Street toward and on to the car track, he looked to see if a car was coming toward him.

The Railway Company's theory: According to the description of the accident as given by witnesses for the Railway Company, the autobus, after taking on the passenger at Twenty-first Street, moved from the curb in a diagonal direction toward the car tracks, but, instead of "straddling" the rail, was "straightened out" before it reached the nearest rail and then was driven easterly along Santa Monica Boulevard parallel with the southerly rail but sufficiently distant therefrom to permit an interurban car traveling in the same direction to pass without danger of collision, and continued thus along the boulevard for a distance of about four blocks, followed by the electric car, when, suddenly and without giving the motorman any warning of his intention to change his course, the driver of the bus turned his vehicle abruptly to the left toward and on to the car tracks directly in the path of the interurban car, which, traveling in the same direction as the bus, ran into the rear end of the latter vehicle before the surprised motorman, by the exercise of reasonable diligence, could arrest the momentum of his car in time to avoid the collision.

Appellant concedes the rule to be, as indeed he must, that where an injury is occasioned by the separate but concurrent negligence of two parties at one and the same time each is liable and an action will lie against both. But though conceding that he and his codefendant would be liable if the in-

jury were proximately caused by their concurrent negligence, appellant contends that under the facts of this case it was impossible for both defendants to have been negligent. His argument runs substantially as follows: Because a verdict was rendered against the Railway Company it necessarily must follow that the jury found that appellant's autobus was not suddenly and unexpectedly turned on to the railroad tracks in the path of the oncoming interurban car as described by the Railway Company's witnesses; for, if the bus had been driven in that manner no negligence could have been imputed to the servants of the Railway Company and that defendant would not have been held liable; and if appellant's bus was not driven in the manner described by the Railway Company's witnesses, then the jury necessarily must have accepted appellant's theory, i. e., that the bus was crashed into from the rear while being driven astride the southerly rail. And it further is argued that since it is not negligence *per se* to drive a vehicle along or in close proximity to street-car tracks, and since the failure of one thus driving his vehicle to keep a constant watch behind for an approaching street-car does not show a want of ordinary care nor constitute negligence *per se* (*O'Connor* v. *United Railways*, 168 Cal. 43 [141 Pac. 809]), appellant cannot be held liable under a theory of the accident which makes his codefendant liable.

The vice of appellant's argument lies in the assumption that because the failure of one who is driving along a street-car track to keep a constant watch behind for oncoming cars is not negligence *per se*, therefore one so driving is not guilty of negligence though he never look behind and even though he give no heed to a warning to turn off the track.

[1] Unquestionably the mere fact that one is driving a vehicle astride of or in close proximity to street-car tracks is not negligence *per se*. [2] Public highways are for the use of the traveling public, and the right of a street-car company is only to use the street in common with the public. The Railway Company has no exclusive right to travel even over that portion of the street which is covered by its tracks. Other vehicles have the right to travel over the entire street, including the space between the tracks. [3] As one of the traveling public the driver of an auto-

mobile is entitled as of right to use the entire street, subject only to the limitation that, as the use of the street by the Railway Company is confined to its tracks, the driver must not unnecessarily interfere with or obstruct a car in its movement thereon.   (*O'Connor* v. *United Railways, supra.*) Equally true is it that it is not negligence *per se* for one who is driving his vehicle astride of or in close proximity to a street-car track to fail to keep constant watch behind for an approaching car. In *O'Connor* v. *United Railways, supra,* at page 49, the court says: "Nor did the fact that he [the driver of the hotel bus] did not keep a *constant* watch behind for an approaching car while driving near the track show want of ordinary care on the part of the plaintiff or constitute negligence *per se.*" (Italics ours.) The reason for this, as stated in the O'Connor case, is that one driving along a public highway in the same direction in which a car may approach from behind is necessarily engaged in looking in front of him to have a care that he does not collide with some other vehicle ahead enjoying also the common use of the highway. The exercise of ordinary care makes it his duty to look ahead so as to avoid any collision with those in advance of him. And as it is not possible for him to look simultaneously forward and backward, it necessarily is not negligence *per se* to fail to keep a constant watch behind for an approaching street-car.

[4] But though it cannot be said that the failure to keep a constant watch behind for an approaching street-car is negligence *per se,* it does not follow that one may drive his vehicle for any distance astride of or in close proximity to car tracks without ever looking behind or even listening for the approach of a street-car. What amount of vigilance was requisite to constitute the "utmost care and diligence" required of this appellant as a carrier of passengers for hire was a question which the jury was to determine, not alone from what the driver of the autobus may have done in the way of looking and listening, but from a consideration of the reciprocal rights of all the parties entitled to the use of the highway, including those of the street-car company. (*O'Connor* v. *United Railways, supra,* pp. 49, 50.) "The car company is entitled in the interest of the public service to a free and unobstructed passage at all times of its

cars over its tracks when necessary, and when such movement is being made free vehicles must yield a clear right of way to it for that purpose.'' (Id.) For this reason, although it cannot be said that one who is driving a vehicle along or in close proximity to a street-car track is in duty bound to keep a constant watch behind for approaching cars, it is his duty to turn off or away from the tracks when he sees or hears, or by the exercise of reasonable care should see or hear, a car approaching from the rear. He should listen for and he should heed whatever signal there may be of an approaching car. (*Swayne* v. *Connecticut Co.*, 86 Conn. 439 [85 Atl. 634, 737] ; *Morrissey* v. *Bridgeport Traction Co.*, 68 Conn. 215 [35 Atl. 1126] ; *Kowalkowski* v. *Milwaukee etc. Ry. Co.* 157 Wis. 473 [146 N. W. 801] ; *North Chicago etc. Ry Co.*, v. *Peuser*, 190 Ill. 67 [60 N. E. 78] ; *Chicago etc. Ry. Co.* v. *Bert*, 69 Ill. 388; *O'Brien* v. *Washington etc. Co.*, 79 Wash. 82 [139 Pac. 771] ; *Keyes* v. *Metropolitan Street Ry. Co.*, 161 Mo. App. 545 [144 S. W. 166] ; 36 Cyc. 1549.) The rule is stated by the Missouri supreme court as follows: ''The plaintiff [a teamster] had a right to drive along the street, and even drive upon the track of the defendant, if the condition of the street or the exigencies of the case required it, and he should have exercised ordinary care in listening for the gong or signal of an approaching car from the rear, and if he heard one to have withdrawn his wagon from the tracks.'' (*Zander* v. *Transit Co.*, 206 Mo. 445 [103 S. W. 1006].)

It has been held by eminent authority that though one driving along or in close proximity to street-car tracks need not keep a constant watch for street-cars approaching from the rear, he should look behind him from time to time so that if a car be near he may turn off and allow it to pass without hindrance or any slacking of its ordinary speed, and that his failure to observe such precaution is at his own risk. (*Adolph* v. *Central Park etc. R. R. Co.*, 76 N. Y. 530; *Theobald* v. *Transit Co.*, 191 Mo. 395 [90 S. W. 354] ; *McGauley* v. *Transit Co.*, 179 Mo. 583 [79 S. W. 461] ; Booth on Street Railways, sec. 316.) In *Adolph* v. *Central Park etc. R. R. Co.*, *supra*, Mr. Justice Folger, in a very carefully considered opinion, states the rule and the reasons therefor as follows: ''The car cannot turn off the track to go by. He [the driver of a vehicle ahead of

the car] can turn off the track to let it go by. He must do this. He must be ready to do it when the need arises. . . . So that the driver of the common vehicle should be in constant expectation of the coming of a car, with a constant feeling that he will be at once required to do his duty of leaving the track. Therefore it is due from him, not only that he should turn off from the track when called upon to do so by a servant of the company, but that he should be more active than that, in learning a necessity for getting out of the way of a coming car. To this end he should listen for whatever signal there may be, either of tinkle of bell or cry of driver; and he should also, while from time to time looking forward to see that his way is clear before him, *look behind him from time to time* to see whether he should not soon turn off so that a car may pass without hindrance or undue slackening of ordinary speed. . . . He is bound to keep out of the way when the need, under such circumstances, arises that he should. Hence, there is upon him the duty of learning when the need has arisen or is likely to arise; and as it is a duty actively to be performed, he is bound to use all the ordinary means of learning; and all his natural senses are surely a part of those means, and to be used in such way as that they will bring information to him. So that he may not wait to hear a signal of the approach of a car, but he must at intervals look backward for it. He is enjoying a right liable to frequent interruption. It is a condition of his enjoyment of it that he make no needless delay. He should use his senses to effect that result.'' (Italics ours.)

[5] We do not find it necessary to go so far as the New York courts and to hold with them that it is the duty of the driver of the free vehicle to look behind him from time to time to see whether he should not turn off to permit an approaching car of the Railway Company to pass him. In the instant case there is evidence that the bus driver was given timely warning by the ringing of the gong on the interurban car, but that he gave no heed thereto. True, the bus driver, as well as other witnesses for appellant, testified that they did not hear any bell or gong sounded by the motorman. But there is no evidence that they listened. To say that the driver of the bus did not hear is as consistent with his not listening as with his

listening and not hearing. (*Tognazzi* v. *Milford etc. Street Ry. Co.,* 201 Mass. 7 [21 L. R. A. (N. S.) 309, 86 N. E. 799].) That the motorman did ring his gong was directly testified to by himself and by passengers on his car. The former, testifying as a witness for plaintiffs, on being asked if he rang his bell replied: "All the way up from Sixteenth Street I was ringing the gong handle, as I always did. . . . I rang the gong." A passenger on the interurban car testified that the car kept on at its regular speed; that he observed it gradually overtaking the bus; that his attention was called to it by hearing the motorman ring his gong twice; and that after hearing this signal he did not suppose the bus would keep on the same way, but that it did. The jurors had the right to believe this testimony of the passenger and also the testimony of the motorman that he rang his gong all the way from Sixteenth Street—a distance of nine or ten blocks to the place where the accident occurred. Indeed, from the nature of their verdict we must assume that the jurors did believe this testimony that the gong on the car was sounded. It is just this testimony which presents a situation justifying the conclusion that the servants of both defendants were concurrently negligent—the motorman because he did not slacken the speed of the interurban car and the bus driver because he did not heed the signal to get off the track.

If, as the motorman testified, the gong on the interurban car was rung, then there can be no question as to appellant's liability. For though it may have been more comfortable for the passengers on the bus and for its driver to travel astride the rail because of the street's slope toward the curb, still it was not necessary to occupy any part of the space between the car tracks—there was ample unobstructed space between the curb and the nearest rail along which the bus could have traveled. In going upon the tract the bus driver chose the more dangerous part of the street. With more safety to his passengers he could have driven along the southerly side of the boulevard outside of the car tracks. His duty to Mrs. Simmons, as one of his passengers, was to use "the utmost care and diligence." (Civ. Code, sec. 2100.) **[6]** But though he owed to the passengers on his bus the highest degree of care, there is evidence to show that he failed to measure up to the

standard of even ordinary care. When he selected the more dangerous part of the highway his care should have been commensurate with the greater danger then assumed. He knew that interurban cars were liable to approach the bus from behind, and as the driver of a vehicle carrying passengers for hire he should have exercised the utmost care to hear the warning signal and to turn off and away from the tracks as soon as the diligence commensurate with the high degree of care which he owed to his passengers would permit. This he failed to do, and his want of due care was a proximate contributing cause of the collision and of the consequent injury to Mrs. Simmons. And though his own contributory negligence would prevent him from recovering for any injuries which he might have sustained, it will not prevent Mrs. Simmons, who was a passenger on the bus, from recovering for her injuries. **[7]** The negligence of the driver of a public conveyance in which passengers are being carried for hire is not imputable to the passengers. (*Tompkins* v. *Clay Street Ry. Co.*, 66 Cal. 163 [4 Pac. 1165]; *Doeg* v. *Cook*, 126 Cal. 218 [77 Am. St. Rep. 171, 58 Pac. 707]; *Field* v. *Spokane P. & S. R. Co.*, 64 Wash. 445 [117 Pac. 228]; *Leavenworth* v. *Hatch*, 57 Kan. 57 [57 Am. St. Rep. 309, 45 Pac. 65]; 10 C. J. 969, 970.)

**[8]** If it should be argued that the verdict against the Railway Company is irreconcilable with any implied finding that the motorman gave timely warning by ringing his gong, the obvious answer is that the mere ringing of the gong would not necessarily relieve the railroad company from blame. The verdict against it, carrying the necessary implication that it also was guilty of negligence, may be accounted for and justified notwithstanding the motorman warned the bus driver by vigorously sounding the gong. For though the gong may have been rung, and though the bus driver may thus have been charged with the duty to give way to the approaching car, nevertheless the motorman may have been guilty of negligence by failing to decrease the speed of his car in time to avoid a rear-end collision after it became apparent that the driver of the bus was not going to turn off in time to avoid a catastrophe; and it is quite possible that the jury found that such failure to decrease the speed of the interurban car was a contributing cause of the accident, and that for that reason

the Railway Company should be held liable even though it should be found that the bus was traveling astride of the rail and that the motorman gave warning by sounding his gong. The motorman's negligence in failing to decrease the speed of his car is a question which is presented for our determination on the appeal taken by that defendant, and for that reason it will not be necessary to consider it further here.

Our conclusion is that after making due allowance for all the facts which, by necessary implication, must be deemed to have been found in appellant's favor by reason of the verdict against his codefendant, there still was sufficient evidence to support the verdict against him; for the evidence would still tend to show that the bus driver made no effort to heed the signal to turn off the track and away from the zone of danger, but that he heedlessly continued on his course regardless of the warning afforded by the clanging gong.

The judgment is affirmed.

Works, J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 8, 1923.

All the Justices concurred.