[L. A. No. 8943. Department One.—January 10, 1928.]

GEORGE F. BERGUIN et al., Appellants, v. PACIFIC ELECTRIC RAILWAY CO. (a Corporation) et al., Respondents.

I. Henry Harris and Aubrey M. Finley for Appellants.

Frank Karr, E. E. Morris, R. C. Gortner and C. W. Cornell for Respondents.

PRESTON, J.—This is an appeal from judgment in favor of defendants in an action to recover alleged damages resulting from collision between automobile in which plaintiffs were riding and an electric street-car of defendant corporation operated by defendant Stringfellow. Praying for damages in amount of $36,000 for injuries suffered by plaintiff Clara F. Berguin, consequential damages suffered by the husband and damage to the automobile, plaintiffs allege negligent operation of the street-car by defendant Stringfellow. The answer charges plaintiffs with contributory negligence. Verdict of the jury was for defendants.

The facts are substantially as follows: Plaintiff George F. Berguin, with his wife and son, was driving north on Serrano Avenue, Los Angeles, with the intention of turning left into and thence proceeding west on Hollywood Boulevard, a cross-boulevard on which street-cars run east and west. When plaintiff reached Hollywood Boulevard he noticed a street-car some distance away—this distance, as testified to by the different witnesses, varying from a block and a half to but a few yards. At any rate, plaintiff made a square left turn into Hollywood Boulevard ahead of the street-car and proceeded along the car track, whereupon the car crashed into his machine, knocking it over to the right curb and entangling a Ford automobile there parked in the collision. The testimony is conflicting on many points,—for instance, as to speed of both automobile and street-car; as to the distance the automobile proceeded on Hollywood Boulevard before being hit, and as to whether the motorman rang his gong continuously for a block before and after reaching the crossing or whether he neglected to ring it until a second before the impact. It is unnecessary, however, to discuss the evidence at length as appellants do not attack its sufficiency or insufficiency to support the verdict. It is only necessary to consider parts of it in connection with the errors of law claimed.

Appellants first allege misconduct of the trial court; second, they complain of his failure to give their requested instruction or any instruction upon the doctrine of the last clear chance, and, third, they attack the instruction given as to the lack of materiality of sounding the street-car gong.

The act of the trial court upon which misconduct is predicated occurred when plaintiff Clara F. Berguin was being assisted by someone when she was about to resume the witness-stand at the convening of court on the second day of her testimony. The record shows the following occurrence: "The Court: I think Mrs. Berguin was on the stand. Mr. Harris: I have a doctor here. The Court: Just a moment. One thing I want to say, it is not necessary for this lady to be helped to the witness-stand. I don't imagine she is helped around her own home, and I don't like to see that in court. Mr. Harris: I don't know that she is being helped. The Court: I saw it just now. Mr. Harris: I don't know that your Honor knows whether it is necessary. The Court:

Then we will find out. Mr. Harris: I take exception to that. The Court: All right. You can take your exception and I will examine her and find out whether she is or not. Mr. Harris: Then do that, but I think the comment is unnecessary. The Court: It is not unnecessary. Whenever anything of that kind happens in my department I expect to speak about it. Mr. Harris: I know, but your Honor is intimating to the jury— (Interruption.) The Court: Call your Doctor, Mr. Harris. Mr. Harris: I assign that as misconduct. I don't think a remark is necessary, and I don't know that the remark is necessary. The Court: She came up to the witness-stand yesterday by herself. Mr. Harris: I think your Honor will find you are in error. The Court: She came up to the witness-stand yesterday by herself. Mr. Harris: I know she did, but yesterday is one day and today is another day. The Court: Proceed with your case. Mr. Harris: Dr. Wright.''

The extent of the physical condition of this witness as the result of the collision was the chief element of damages in the case. At the time of the above remarks of the court, one physician had already testified that this plaintiff was suffering from a toxic exophthalmic goiter, the result of which was a greatly weakened physical condition, an abnormally fast pulse and a tremor of the body, with protrusion of the eyes. The proof also showed that she was unable to adequately perform the duties of her household and spent much of her time in bed; also, that her heart was badly involved. There was no evidence whatsoever that her condition was in any way feigned nor was there any evidence that her attorneys or her husband or any other persons were contriving to create a false impression in the minds of the jury as to her condition or even to exaggerate or emphasize it. The offer of assistance was apparently a spontaneous impulse, presumably of her fifteen year old son or her husband.

Following the colloquy above quoted, Dr. Wright, instead of this plaintiff, took the witness-stand and gave the same diagnosis of her condition as had been given previously, testifying that at the time he was called, which was on a recent date, she had all the symptoms above mentioned, together with a pulse of something like 160. He also observed that excitement tended to intensify and aggravate

her malady and increase her weakness; that sometimes a patient with this disease could navigate, notwithstanding such rapid heart action, but at other times "their heart beats in a tumultuous manner and rest seems imperative." He also said that "anything that overexcites the nervous system, if finally continued, will bring on exhaustion." The trial of the cause and the strain of being on the witness-stand were impliedly recognized by him as one of the causes of such excitement.

This condition was apparently present when the lady a few moments after the incident above referred to did, in fact, resume the witness-chair. She could not make herself heard and complained of being nervous. A pause was made in the proceedings to allow her to compose herself, whereupon the court said: "I think you had better defer the examination until later in the day." The examination proceeded, however, for a few questions, whereupon the court again said: "Now, it is difficult for her to speak loud. The reporter evidently hears it. He can repeat each answer after the witness. It is difficult for her to make herself heard." The foregoing facts show clearly the absence of any intentional effort to deceive the court or jury. The remarks of the court, in view of these facts, could not have been other than highly prejudicial. A perfect case in plaintiff might well have been destroyed by such remarks. The standing of plaintiff, both as a witness and as a litigant, doubtless withered like a leaf in a flame before these burning words of the court. It needs no citation to convince any unbiased observer that a jury has both ears and eyes open for any little word or act of the trial judge from which they may gather enough to read his mind and get his opinion of the merits of the issues under review. The learned and distinguished trial court doubtless regretted the hasty act on his part but the jury were not adequately or at all apprised of this fact. In fact, throughout the trial plaintiffs' counsel were repeatedly subjected to the severest strictures by the court, many of which seem unwarranted.

The evidence of plaintiffs' witnesses would have amply supported a verdict in their behalf. We agree with the language of *O'Connor* v. *United Railroads*, 168 Cal. 43, 47 [141 Pac. 809, 811], as follows: "It must be apparent that in operating a street-car over a public street a motorman

cannot under ordinary circumstances run down a vehicle proceeding in the same direction without having been negligent in the operation of his car. The mere fact that he does so furnishes cogent evidence of negligence which is rarely capable of explanation.'' (See, also, *Gallett* v. *Central Cal. etc. Co.,* 36 Cal. App. 240, 246 [171 Pac. 984], and *Adamson* v. *San Francisco,* 66 Cal. App. 256, 259 [225 Pac. 875].)

■ The above error must, therefore, be held sufficient in and of itself under the circumstances of this case to compel a reversal of the judgment, for under our system of procedure the trial judge may not thus invade the exclusive province of the jury. ''Under a system of law which prohibits judges from charging juries with respect to matters of fact (Const., art. VI, sec. 19), and which gives to the jury the exclusive power to determine the facts (Pen. Code, sec. 1126), the trial judge should, as has often been pointed out, use the greatest care to avoid, in the presence of the jury, any utterance which may be construed as an intimation of his opinion on the issues of fact which are to be determined by the jury (citing cases). . . . Anything said by the judge, indicating that the witness on the stand had, by her demeanor, created a favorable impression on his mind, would naturally tend to lead the jury to give to her testimony greater weight than they otherwise might. . . . Such an intimation constituted an invasion of the jury's province of judging the facts, in the light of the appearance and demeanor of witnesses, and might be highly prejudicial.'' (*People* v. *MacDonald,* 167 Cal. 545, 550, 551 [140 Pac. 256, 258]; see, also, *McMinn* v. *Whelan,* 27 Cal. 300, 320, 321; *People* v. *Willard,* 92 Cal. 482, 490 [28 Pac. 585]; *Abbott* v. *Coronado Beach Co.,* 55 Cal. App. 179, 182 [203 Pac. 145]; *People* v. *Frank,* 71 Cal. App. 575, 580, 581 [236 Pac. 189].)

■ There is no merit in the suggestion that an exception by counsel to these remarks of the court cannot avail appellant because she did not go further and request the court to instruct the jury to disregard the court's own utterances. The rule contended for is set down in such cases as *Compton-Gardena Milling Co.* v. *McCartney,* 69 Cal. App. 708 [231 Pac. 764], *People* v. *Shears,* 133 Cal. 154, 159 [65 Pac. 295], *Hale* v. *San Bernardino, etc.,* 156 Cal. 713, 717 [106

Pac. 83], and *People* v. *Babcock,* 160 Cal. 537, 545 [117 Pac. 549]. But the reasons for this rule are entirely absent when applied to the acts and conduct of the court himself. A second appeal of this character to the court would in all probability have made a bad matter worse. The remarks would probably have been repeated with emphasis and in addition counsel would have found himself in a position anything but pleasant or secure.

■ The evidence of plaintiff was also sufficient to justify an instruction on the doctrine of last clear chance. This is true because of the following facts: Plaintiff George F. Berguin's testimony was that ample time and space existed when he last saw the street-car to warrant the belief on his part that it would be safe to enter the intersection and turn west upon the boulevard and, in view of the congested traffic, to drive along or upon the car tracks. ■ There is no rule of law that required him, after making up his mind to this effect, to continue to look backward for the oncoming of the street-car when his duties directed him to look in front. It is not negligence to drive even upon the car tracks of a street. The rule in this behalf has been stated as follows: "As a general rule, whether a person has exercised ordinary care or not is to be left to the jury to be determined by them from all the circumstances surrounding him at the time. But it was not negligence *per se* for the plaintiff to drive along the street as he did in proximity to the track of the defendant. This of itself did not constitute negligence at all. The streets of a municipality are for the use of the traveling public and the right of a street-car company is only to use it in common with the public. The fact that the company has been granted a right to lay tracks and operate cars along the streets gives it no exclusive right to travel even over that portion of the street covered by its tracks. Other vehicles have a right to travel over the entire street, including the space between the tracks. Nor is this right restricted to the times when other portions of the street may be crowded or in bad condition. Nor is a traveler in doing so in any sense of the term a trespasser." (*Adamson* v. *San Francisco, supra,* at p. 259, quoting from *O'Connor* v. *United Railroads, supra;* see, to the same effect, *Callett* v. *Central Cal. etc. Co., supra.*)

*Taylor* v. *Pacific Electric Ry. Co.*, 172 Cal. 638, at 650 [158 Pac. 119, 123], approves the language of *Fujise* v. *Los Angeles Ry. Co.*, 12 Cal. App. 207, 216 [107 Pac. 317], as follows: "The sum of the adjudicated cases bearing upon the relative rights of street-cars and citizens traveling in vehicles drawn by horses or other animals is that both have a right to use the street, but neither has the exclusive right. The motorman of a street-car is not necessarily obliged to stop his car when he sees a man driving a vehicle along the line of a railway ahead of the car, but he may continue to run the car in a proper manner until he is conscious of the fact that the driver is unaware or heedless of his danger. . . . Seeing a man driving along the track, the motorman may assume that he will turn aside and out of the way of the car, but he cannot rest on the assumption so long as to allow his car to reach a point where it will be impossible for him to control his car or give warning in time to prevent injury to the man or vehicle."

It is also true, taking the defendants' evidence, that the jury would have been warranted in believing that the motorman saw the position of plaintiff and knew it was one of danger from which he could not alone extricate himself and had time thereafter within which to check the speed of his car or to stop same outright, if necessary, and thus avoid the collision. For the motorman himself testified that he saw plaintiff coming at a terrific rate of speed and that he had so much speed he could not stop. This observation on the part of the motorman must have occurred at least 125 feet and may have occurred at a much greater distance from the point of the impact. He admitted also that he did not stop his car until some 90 or 95 feet beyond that point. At a rate of 15 miles per hour he could have stopped in about 75 feet; at 18 miles in less than 100 feet.

It is no answer to this observation to say that plaintiff by the exercise of ordinary care could have extricated himself. The rule of last clear chance applies not only to cases where the negligent plaintiff knows his position of danger and cannot by the exercise of ordinary care escape from it, but also applies equally as well to cases where the negligent plaintiff is oblivious to or unconscious of his position of danger. (*Arnold* v. *San Francisco-Oak. Term. Rys.*, 175 Cal. 1 [164 Pac. 798].) In other words, and as a sec-

ond hypothesis, the motorman practically admitted a realization of plaintiff's position of danger, of which the jury might well have believed said plaintiff was oblivious; the motorman knew of this fact and after thus realizing it could have stopped the car in time to have avoided the accident. The rule has also been stated in this language: "The plaintiff's right of recovery exists when the defendant, after having discovered his peril, having also reasonable ground to believe him unconscious of danger, or unable to avoid it, might himself, by the exercise of ordinary diligence, have prevented the mischief which followed." (20 R. C. L., p. 143, sec. 117.)

The court gave no instruction on this subject. The instruction requested and refused by the court was in the following words: "If you believe from the evidence that the driver of the automobile was guilty of negligence in driving too near, or upon, the track of the street railway company, but you also believe from the evidence that the motorman driving the street-car belonging to the railway company was aware of the dangerous situation of the automobile and that he had a clear opportunity by exercise of proper care to have avoided the collision but failed to do so, and as a direct consequence of such want of proper care the collision occurred, then your verdict should be for the plaintiff and against the defendant." This instruction was expressly approved in *Spear* v. *United Railroads*, 16 Cal. App. 649 [117 Pac. 956], and while it is true the instruction could have been better framed by stating therein that the motorman must have known of plaintiff's inability to escape his position of danger or of his obliviousness thereto, nevertheless, in view of the practical admission of the motorman as to such knowledge, or at least to such belief, we cannot say that it was erroneous as applied to the facts of this cause.

Lastly, the court instructed the jury as follows: "I do not think that the failure to ring a bell, if he did fail to ring a bell, as it was approaching this crossing, has anything to do with this case, because it appears beyond controversy by the testimony of Mr. Berguin that he saw the car coming. A motorman or a party driving an automobile, in this case, Mr. Berguin, suddenly confronted with unexpected danger, is required to exercise only that care which an ordinarily

prudent man confronted with such unexpected danger would exercise.''

■ We think that the giving of this instruction under the facts of this case was also error. To give this instruction was to ignore the testimony of plaintiffs. It is true that if said plaintiff George F. Berguin had known that the street-car was bearing down upon him and demanding that he surrender his position to give right of way to it, the ringing of the bell would have been immaterial, but ordinarily an automobile will easily, all things being equal, maintain a lead over an ordinary street-car. The cases of *Starck* v. *Pacific Elec. Ry. Co.*, 172 Cal. 277, 280 [L. R. A. 1915E, 58, 156 Pac. 51], *Taylor* v. *Pacific Elec. Ry. Co.*, 172 Cal. 638, 647, 648 [158 Pac. 119], and *Lambert* v. *Southern Pac. R. R. Co.*, 146 Cal. 231, 236 [79 Pac. 873] are not applicable to the case before us. Plaintiff's testimony to the effect that he was in a safe position with respect to the oncoming car at the time he turned west at the intersection cannot be ignored. This being true, his duty to look ahead and not behind would have demanded of the motorman the ringing of the bell or the use of some other method of attracting attention of said plaintiff before coming into collision with him. It being also conceded that a great deal of traffic existed on this boulevard at the time of the collision the necessity for travel on or near the car tracks may have existed. The true rule in this behalf may be found in the following cases:

*Simmons* v. *Pacific Elec. Ry. Co.*, 60 Cal. App. 129, 134–136 [212 Pac. 637], where the court said: ''As one of the traveling public the driver of an automobile is entitled as of right to use the entire street, subject only to the limitation that, as the use of the street by the Railway Company is confined to its tracks, the driver must not unnecessarily interfere with or obstruct a car in its movement thereon. (*O'Connor* v. *United Railways, supra.*) Equally true is it that it is not negligence *per se* for one who is driving his vehicle astride of or in close proximity to a street-car track to fail to keep constant watch behind for an approaching car. In *O'Connor* v. *United Railways, supra,* at page 49 [141 Pac. 809], the court says: 'Nor did the fact that he (the driver of the hotel bus) did not keep a *constant* watch behind for an approaching car while driving near

the track show want of ordinary care on the part of the plaintiff or constitute negligence *per se.'* (Italics ours.) The reason for this, as stated in the O'Connor case, is that one driving along a public highway in the same direction in which a car may approach from behind is necessarily engaged in looking in front of him to have a care that he does not collide with some other vehicle ahead enjoying also the common use of the highway. The exercise of ordinary care makes it his duty to look ahead so as to avoid any collision with those in advance of him. And as it is not possible for him to look simultaneously forward and backward, it necessarily is not negligence *per se* to fail to keep a constant watch behind for an approaching street-car. . . . For this reason, although it cannot be said that one who is driving a vehicle along or in close proximity to a street-car track is in duty bound to keep a constant watch behind for approaching cars, it is his duty to turn off or away from the tracks when he sees or hears, or by the exercise of reasonable care should see or hear, a car approaching from the rear. He should listen for and he should heed whatever signal there may be of an approaching car." (See, also, *O'Connor* v. *United Railways, supra; Lawyer* v. *Los Angeles Pac. Co.,* 161 Cal. 56 [118 Pac. 237]; *Smith et al.* v. *Southern Pac. Co.,* 201 Cal. 57 [255 Pac. 500].)

Judgment reversed.

Curtis, J., and Seawell, J., concurred.