[Civ. No. 3554.   Third Appellate District.—December 21, 1928.]

MILLARD SCOTT, Respondent, v. LOS ANGELES RAILWAY CORPORATION, Appellant.

Gibson, Dunn & Crutcher and Philip C. Sterry for Appellant.

R. T. Walters, R. Goer and Arthur G. Wray for Respondent.

FINCH, P. J.—The plaintiff was given judgment for damages sustained in a collision of an automobile driven by him with one of defendant's cars. The defendant has appealed.

The collision occurred in the city of Los Angeles, on Whittier Boulevard, which extends east and west and is seventy-five feet wide. The defendant maintains double tracks along the middle of the boulevard. The accident occurred about 2 o'clock in the morning. Immediately prior to the accident a work train of the defendant, consisting of

an electric engine and three flat cars, had been moving westerly on the south track, the three flat cars being pushed ahead of the engine, which had a bright headlight on the north side thereof shining "over and above the flat cars." The evidence is conflicting as to whether the train was moving at the moment of the accident, but it was moving slowly, if at all. There was at least "a little bit of an oil light, a little red oil light that they had on the end of the flat car . . . on the left side," the north side. The plaintiff testified:

"Going out Whittier boulevard, . . . you come up over a rise; the street is more or less up and down there for 6 or 7 blocks. . . . You can see down the slope, down to where I seen this big headlight. I was proceeding eastward, the left side of my car just on the inside of the south rail. I noticed at the time that the bright light was on the north track, . . . that was the impression given to me. It appeared the same to me until after the accident occurred a block and a half further down the street. I would not say the light was brilliant, but there was a fog that was on; it just kind of penetrated in the fog in such a way it just blinded me from seeing anything near the light; that is what it seemed to me. . . . As we proceeded down the street . . . I never knew anything about flat cars or any cars whatsoever between the light and myself until I heard a crash. I never took my foot off the throttle. . . . I did not see anyone give any warning before I struck the corner of the flat car. . . . I never seen a light on the flat cars until after I was hit. . . . I had been using Whittier boulevard every day, and I knew that the street car tracks were being repaired down along there. . . . At the time of the collision, I was going just about 20 or 25 miles an hour. . . . The light did not dazzle my vision so I could not see in front; it gave me the impression that it was on the other track so there was nothing for me to be alarmed about. Of course I know now that the light dazzled my eyes so I could not see. My vision must have been blinded by the light because I never realized at the time I ran into those big flat cars in that light. I could see about 60 feet in front of me. . . . It was foggy the night of the accident. It was not so foggy that under the circumstances I felt I would be in danger if it was not for something caused me to be in danger."

A witness who was riding with the plaintiff at the time of the collision testified that the headlight seemed to be on the north track; that "it was a very bright light. . . . I did not see the flat cars before we struck them. I was looking in the direction of the street car track and the headlight at the time. . . . It was foggy that night, but there was no mist on the windshield; just a little bit, but he had a swipe. I could see out of my side and that didn't have any swipe—on my side. The mist did not obstruct my vision very much. . . . There was nothing to prevent our driving over near the curb only there was a sort of a little viaduct, but it was . . . darker on either side, and it was easier to run just along the tracks rather than run closer to the side. . . . The light (headlight) seemed to be coming toward us all the time. The street there is slightly down hill and the light seemed to be coming slow. . . . Before the collision . . . I saw no light on the flat cars, except the bright light on the engine. It was an electric engine. The flat cars were about three feet in height." The motorman who was in charge of the defendant's train testified: "The headlight on the motor shines over and above the flat cars. The headlight was on the right-hand side of the motor, going west." The defendant introduced testimony in contradiction of some of that quoted, but the question under consideration is whether there is sufficient evidence to warrant the verdict and judgment, not whether the preponderance thereof is on the one side or the other.

The evidence is sufficient to show negligence on the part of the defendant. The natural effect of placing the three flat cars, each thirty-five feet in length, in front of the engine, with its bright headlight shining "over and above the flat cars," was to obscure them and any red lights thereon from the view of the plaintiff. These facts were entitled to consideration by the jury in determining the question of the defendant's negligence and that of the alleged contributory negligence of the plaintiff. (*Simoneau* v. *Pacific Electric Ry. Co.*, 166 Cal. 264, 271 [49 L. R. A. (N. S.) 737, 136 Pac. 544].) The placing of these flat cars ahead of the engine with the headlight turned in a westerly direction on the south track was, as a matter of common knowledge, contrary to the usual practice. In *Adamson* v. *San Francisco*, 66 Cal. App. 256, 260 [225 Pac. 875],

in discussing a similar question, it is said: "Where . . . one of the parties has, to the discomfiture of the other, without notice, departed from the usual custom or practice, the courts have by an unbroken line of decisions held that the question of negligence on the part of the defendant, and the question of contributory negligence on the part of the plaintiff, are both questions for the jury to determine in the light of all of the facts." The fact that the headlight was on the north side of the engine, facing west and shining through the fog, may well have created the impression, as asserted by the plaintiff, that the engine was on the north track. ▮ Whether or not the plaintiff, under the facts and circumstances shown, was guilty of contributory negligence was a question of fact for the jury. (*Wurl* v. *Watson*, 67 Cal. App. 625, 630 [228 Pac. 43]; *Adamson* v. *San Francisco, supra; Haynes* v. *Doxie*, 52 Cal. App. 133, 135 [198 Pac. 39]; *Indemnity Co.* v. *Wasco Land & Stock Co.*, 51 Cal. App. 672, 675 [197 Pac. 390]; *Ham* v. *County of Los Angeles*, 46 Cal. App. 148, 158 [189 Pac. 462].) Appellant relies on *Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82 [41 A. L. R. 1027, 239 Pac. 709]. The facts of that case were essentially different from those of this, only one of which differences need be noticed. In that case the defendant, while blinded by the headlights of another automobile, drove his own machine forward until he struck and killed a pedestrian who was walking on the highway. The pedestrian, of course, had done nothing to obscure the defendant's view of him. In this case the confusion which misled the plaintiff was caused by the negligence of the defendant. In Thompson on Negligence, section 192, it is said: "The defendant cannot impute to the plaintiff a want of care or vigilance which has been produced by the defendant's own negligence." (See, also, *Ernst* v. *Hudson River R. R. Co.*, 35 N. Y. 9, 28 [90 Am. Dec. 761]; *Morrissey* v. *Wiggins Ferry Co.*, 47 Mo. App. 521, 523; *Pennsylvania R. R. Co.* v. *Ogier*, 35 Pa. 60, 72 [78 Am. Dec. 322]; *Kinney* v. *Folkerts*, 78 Mich. 687, 697 [44 N. W. 152].) In *Robinson* v. *Western Pacific R. R. Co.*, 48 Cal. 409, 421, it is said that it cannot be imputed as negligence that the plaintiff did not anticipate culpable negligence on the part of the defendant. The defendant's negligence, of course, did not excuse the plaintiff from the exercise of ordinary care. Whether he exercised

such care is to be determined from all the facts and circumstances surrounding him at the time of the collision, one of which is that he was misled into a feeling of false safety by the negligent acts of the defendant, any want of vigilance on his part being induced by the defendant's own negligence. It cannot be held, therefore, as a matter of law, that the plaintiff was guilty of contributory negligence.

Section 122 of the Motor Vehicle Act provides: "On all occasions, the driver of a vehicle shall drive the same upon the right half of a public highway and close to the right-hand edge or curb of such highway, unless it is impracticable to travel on such side of the highway." (Stats. 1923, p. 517.) Whether or not this provision was intended to apply to city streets and the meaning of the phrase "close to the right-hand edge or curb" need not be determined, because it was for the jury to decide whether the facts shown by the evidence rendered it impracticable to drive close to the edge or curb of the street. Appellant did not request the court to instruct the jury on that question, and it cannot be said as a matter of law that the plaintiff was negligent in that respect. The plaintiff drove his automobile at all times well to the right of the medial line of the street. It is not negligence *per se* to drive an automobile upon the car tracks of a street. (*Berguin* v. *Pacific Electric Ry. Co.*, 203 Cal. 116 [263 Pac. 220, 223].) The court instructed the jury as follows: "If you find that the defendant placed its train of cars upon the tracks as described in the complaint and answer in such a position that the servants, agents and employees of said defendant knew, or in the exercise of ordinary care should have known that an accident was likely to result, and if you further find that said defendant failed to exercise ordinary care in giving warning to approaching vehicles, then I instruct you that said defendant was guilty of negligence."

Appellant contends that by this instruction the court submitted to the jury an issue not tendered by the complaint. The complaint alleges negligence generally and then alleges specifically that "the defendant carelessly, negligently and recklessly maintained and had an electric light on said engine shining west and immediately over said flat cars, and that as a result of which plaintiff was blinded and was unable to see the flat cars." The instruction in question does

not submit to the jury an issue not tendered by the complaint, but it is based on the foregoing specific allegations of negligence. In effect it states that the maintenance of the alleged dangerous situation constituted negligence unless the defendant exercised "ordinary care in giving warning to approaching vehicles."

Similar complaint is made of another instruction to the effect that, under the circumstances alleged, "it was the duty of defendant's employees in charge of the electric motor and flat cars, . . . upon and along said Whittier boulevard . . . to exercise reasonable care and keep a careful lookout in order to avoid possible injury to persons or vehicles which might be on said Whittier boulevard. If you find from the evidence that the defendant's employees did not exercise reasonable care for the safety of persons and vehicles used on said boulevard, so as to avoid a collision with said electric motor and flat cars, and that by reason of such negligence of the employees of said defendant the plaintiff sustained injuries and damages as alleged in his complaint, then the plaintiff is entitled to recover in this case." Particular objection is made to the statement that it was the defendant's duty to "keep a careful lookout in order to avoid possible injury to persons or vehicles which might be on said Whittier boulevard." The court doubtless intended to say that it was the duty of those in charge of the train to "keep a careful lookout" when the train was in motion, and the jury probably so understood the instruction. It is the duty of those in charge of any moving vehicle to exercise such care at all times. In similar language, the court instructed the jury that it was the duty of the plaintiff "to exercise ordinary care in maintaining a lookout." The word "lookout," as used in both instructions, clearly means a looking or watching. While the instruction in question should have been more accurately worded, an examination of the entire cause, including the evidence, does not lead to the opinion that the alleged error, or any error complained of, has resulted in a miscarriage of justice. (Const., art. VI, sec. 4½.)

Complaint is made of the court's refusal to give a number of instructions requested by the defendant. These proposed instructions and those given by the court have been carefully considered and, while those refused are too numer-

ous to be specifically discussed, it may be stated generally that it does not appear that the action of the court in relation thereto has prejudiced the rights of defendant. The instructions given by the court fairly and fully stated the law applicable to the facts proved.

The judgment is affirmed.

Plummer, J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 19, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 18, 1929.

All the Justices concurred.