[Civ. No. 16875.   First Dist., Div. Two.   Dec. 7, 1956.]

JOSEPH GERACE, a Minor, etc., et al., Respondents, v. KEY SYSTEM TRANSIT LINES (a Corporation) et al., Appellants.

Donahue, Richards, Rowell & Gallagher, Edward J. Rice and Stafford P. Buckley for Appellants.

Bernard Allard and Leon G. Seyranian for Respondents.

DOOLING, J.—This is an appeal from a judgment entered pursuant to a jury verdict in favor of plaintiffs Joseph Gerace, a minor, by and through his guardian ad litem, Tally Gerace, and Tally Gerace in a personal injury action. The minor plaintiff recovered the sum of $250 while plaintiff Tally Gerace recovered the sum of $5,000. Defendants are Key

System Transit Lines, a corporation (hereinafter called Key System), and one C. F. Peterson, an employee of Key System.

Respondents' injuries arose out of an interurban electric train-automobile accident which occurred on December 9, 1953, at about 5 p. m. At the time of the accident respondents were passengers in an automobile driven by Alfred Gerace, husband and father respectively of respondents Tally and Joseph Gerace. The automobile in which respondents were riding was struck from the rear by a train of appellant Key System operated by appellant Peterson.

The accident occurred on Twelfth Street between Broadway and Washington Street very close to the intersection of Washington and Twelfth Street in downtown Oakland. At the time of the accident both the train and the car in which respondents were riding were proceeding in a westerly direction on Twelfth Street. Alfred Gerace testified that he had driven south on Broadway until he came to Twelfth Street. At the intersection of Broadway and Twelfth Street he turned right and went west along Twelfth Street. He was then alongside of the train and he noticed that the train's doors had just closed and that it was starting forward. He was traveling at a speed of about 10 to 15 miles per hour. He intended to make a left turn at the next intersection, Washington and Twelfth Street. He looked behind in his rear view mirror and saw appellants' train about 150 feet behind him. He then looked ahead and saw that the traffic signal at the intersection he was approaching was green for traffic on Twelfth Street. After hand-signaling his intention to do so, Mr. Gerace then entered the extreme left lane preparatory to making his intended left turn. At this time he estimated that he was about 100 feet east of the Washington and Twelfth Street intersection. When he was about 50 feet from the intersection the traffic signal turned amber for Twelfth Street traffic. He then brought his automobile to a stop just east of the pedestrian crosswalk. He noted that a police officer located in the intersection was signaling for someone to go through the intersection but at that time there were pedestrians in the crosswalk. Mr. Gerace next heard the sound of a horn and felt an impact from the rear which shoved his automobile into the middle of the intersection.

The only warning from the train heard by Alfred Gerace was almost instantaneous with the impact and respondent Tally Gerace did not hear a signal until the time of the accident.

James McPartland, the police officer on duty at the Washington and Twelfth Street intersection testified that he saw the accident happen. At the time of the accident the automobile in which respondents were riding was stopped in the automobile lane nearest to the center of the street. When he first observed the train it was about 51 feet behind the Gerace automobile. Traffic control signals were in operation at the intersection where the accident occurred. Those signals applied to both trains and automobiles traveling on the roadway. When the officer realized that an accident was imminent he held back the traffic on Washington Street and directed the driver of the Gerace automobile to come ahead. He did not know if the automobile had started to move before the impact occurred.

Officer McPartland further testified that he had observed the Key System's trains on many occasions. He had also observed them when they applied their brakes and had heard the sounds of braking of the train. In this case he did not hear any sounds of braking before the accident and he did not see the train slacken its speed in any appreciable amount before the accident. He was familiar with what happens when a train goes into "heavy braking"— when gravel is thrown onto the rails and the brakes are applied. Neither before the accident nor at the time of the impact did he note that such a procedure for stopping the train was utilized. He did not hear any bell or whistle given by the train before the impact.

The above recital of testimony given makes it obvious that the evidence is ample to support the verdict. Taking the evidence most favorable to respondents and disregarding conflicts, when the slowly moving train was 150 feet behind him the driver of the automobile moved on to the track in front of the train intending to make a left turn at the next intersection. At that time the signal light was in his favor. When he saw the light turn to amber he slowed his automobile and brought it to a stop at the intersection. The signal light was then red. Without any warning, until almost the moment of impact, the train struck his automobile in the rear and drove it into the intersection. Although the train had no mechanical difficulty the emergency brakes were at no time applied.

The driver of the automobile cannot be said to have been guilty of negligence as a matter of law in turning onto the track 150 feet ahead of a slowly moving train to make a left

turn at the next intersection. █ The driver of an automobile is not negligent as a matter of law in driving on that part of a street occupied by the tracks of a street railway and whether or not it was negligence under the circumstances disclosed by the evidence for the driver to turn onto the track 150 feet in front of the slowly moving train was for the jury to decide. (*Berguin* v. *Pacific Elec. Ry. Co.*, 203 Cal. 116 [263 P. 220]; *Arens* v. *United Railroads*, 25 Cal.App. 714 [145 P. 163].) The appellants' negligence might be found by the jury in the failure to keep the train under such control as to stop it before striking the automobile in plain view in front of it, in the failure to sound any warning and in the failure to apply the emergency brakes. Indeed it is not clear from the briefs whether appellants' present counsel are arguing the insufficiency of the evidence to support the verdict. The argument on these points in the opening brief was based on a misconception of the evidence. The closing brief was filed by different counsel, substituted after the opening brief was filed, and the closing brief after acknowledging the misstatements of fact in the opening brief makes no further point of the sufficiency of the evidence.

Complaint is made of several instructions. The first instruction singled out informed the jury that the fact that appellants' tracks occupied a portion of Twelfth Street did not give the defendant corporation an exclusive right to travel over that portion of the street and concluded: "Plaintiffs were entitled as a matter of right to use the street subject only to the limitation that they were obliged to use that degree of care . . . as would a reasonably prudent person similarly situated." The court also instructed that "inasmuch as the movement of the train is restricted by its tracks . . . the operators of other vehicles are required to yield the right of way" over such tracks. These two instructions, taken together were at least as favorable to appellants as the law justifies. █ Our courts have repeatedly stated that street railroads have no exclusive right to travel on the portion of the street occupied by their tracks. "Other vehicles have a right to travel over the entire street, including the space between the tracks." (*O'Connor* v. *United Railroads*, 168 Cal. 43, 48 [141 P. 809]; *Berguin* v. *Pacific Elec. Ry. Co.*, *supra*, 203 Cal. at p. 122; *Adamson* v. *San Francisco*, 66 Cal. App. 256, 259 [225 P. 875].) In the O'Connor case the court at page 48 adds the qualification that this right is subject to the limitation that "a traveler may not unnecessarily

interfere with or obstruct a car in its movement thereon'' and the traveler must yield the right of way when necessary to the streetcar's free and unobstructed passage. The second instruction above referred to adequately covered this qualification.

Appellants' criticism of the following instruction is hypertechnical:

''It is the duty of a motorman operating an electric train on a public street to be vigilant at all times, keeping a reasonable look-out for possible dangers . . . and to keep the electric train under such control that to avoid a collision he can stop as quickly as might be required of him by eventualities that would be anticipated by an ordinarily prudent person in like position.''

Appellants complain of the words ''*possible* dangers,'' saying the instruction should be limited to ''probable dangers.'' The instruction taken as a whole clearly limits liability to the failure to anticipate ''eventualities that would be anticipated by an ordinarily prudent person,'' i.e. want of ordinary care, and could not be understood to require more.

The instruction: ''If you find . . . that the motorman . . . was following the plaintiff's automobile more closely than an ordinarily reasonable and prudent person . . . would have done . . . I instruct you that the motorman . . . was negligent,'' is unimpeachable as a matter of law, and since the train struck the automobile from the rear very shortly after it came to a stop was proper under the facts. The motorman testified that he applied his emergency brakes as soon as he saw the automobile stop. If the jury believed this testimony they might rationally conclude that the train was following the automobile more closely than a person of ordinary prudence would have done, particularly in view of the fact that the motorman knew that the traffic signal might change from green to red, making a stop behind the automobile necessary.

The last instruction complained of reads: ''If you find . . . that the motorman . . . knew that plaintiff's automobile was preceding the electric train and thereafter in the exercise of ordinary care . . . could have avoided a collision . . . I instruct you that the operator of the electric train was negligent.''

Objection is made that since the automobile was in advance of the train but not on the track for a period of time the words ''*preceding* the electric train'' were ambiguous and might erroneously lead the jury to believe that while the

automobile was in this position and before it turned onto the track a duty to anticipate its doing so was cast on the motorman. The instruction required only the exercise of ordinary care and we find no substance in appellants' criticism of it. The jury in our judgment could not have been misled into believing that "preceding" meant other than being ahead of the train on its track, since there was obviously no danger of collision prior to that time.

■ Appellants raise two questions for the first time in their closing brief. Under settled practice we would be justified in disregarding these points. (*Utz* v. *Aureguy*, 109 Cal.App.2d 803 [241 P.2d 639]; 4 Cal.Jur.2d 324.) More cogently, if considered, we should give them little weight, since they are claims of misconduct on the part of the court and opposing counsel, and the attorneys who were in the best position to determine whether the appellants suffered any prejudice from them were appellants' counsel at the trial. Appellants' trial counsel saw no such prejudice since they wrote the opening brief on appeal and did not even mention either of these questions.

The first involved appellant Peterson's testimony that he saw the automobile "ahead of him." A juror asked concerning this testimony: "Is that ahead of, alongside of, or ahead of and directly in front of?" The judge replied: "I should think it would mean directly in front."

Respondents' counsel then said: "I think, your Honor, that that can be cleared up in our argument. In our discussion later." Counsel for appellants made no objection and passed on to another matter. If counsel had any objection to the judge's statement he should have voiced it at the time. ■ No rule is better settled than the one requiring objections to claimed misconduct to be voiced at the trial unless the misconduct is of such a flagrant character that its effect could not be cured by appropriate action of the trial judge.

In his argument to the jury counsel for respondents made a reference to the appellants' "home office in St. Louis." Appellants' counsel said: "I am going to object to this line of argument, your Honor. I assign it as prejudical misconduct."

The court said: "Well, there is nothing in the record to that effect."

Counsel for appellants asked for no further action by the trial court and was apparently satisfied with the court's comment. If counsel desired something more of the trial

judge the time to ask for it was then, when it could have been granted, not now when it cannot be.

The claim advanced in the opening brief that there is no evidence of damage to the minor plaintiff is answered by the testimony of his mother showing headaches, nausea and loss of appetite following the accident and some nervousness continuing to the time of trial.

Judgment affirmed.

Kaufman, J., and Draper, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.